UNITED STATES of America, Appellee,

v.

Anthony L. AUSTIN, Appellant.

No. 89–2029.

United States Court of Appeals,
Eighth Circuit.

Submitted Dec. 15, 1989.

Decided Sept. 26, 1990.

**364**

Mark S. Cohen, Omaha, Neb., for appellant.

Jan W. Sharp, Omaha, Neb., for appellee.

Before McMILLIAN, JOHN R. GIBSON and BOWMAN, Circuit Judges.

McMILLIAN, Circuit Judge.

Anthony L. Austin appeals from a final judgment entered in the District Court[1] for the District of Nebraska upon a jury verdict finding him guilty of making a false statement in connection with the purchase of a firearm, in violation of 18 U.S.C. § 922(a)(6) (count I), and unlawfully receiving a firearm, in violation of 18 U.S.C. § 922(g)(1) (count II). The district court sentenced Austin to five years imprisonment on count I and a consecutive term of fifteen years imprisonment on count II, pursuant to 18 U.S.C. § 924(e)(1), a special assessment of $100, and $70 for cost of prosecution. For reversal, Austin argues the district court erred in (1) refusing to give his proposed instruction on entrapment by estoppel, (2) holding the evidence was sufficient to support the jury verdict on count I, and (3) sentencing him for count II under the sentence enhancement statute, 18 U.S.C. § 924(e)(1). For the reasons discussed below, we affirm the judgment of the district court.

## BACKGROUND FACTS

On November 6, 1988, local police officers executed a search warrant for an apartment in Omaha, Nebraska, and seized a loaded, .22 caliber, semi-automatic rifle. The police also found evidence that Austin lived in the apartment. The Bureau of Alcohol, Tobacco and Firearms (ATF) conducted a gun trace and learned that the rifle had been shipped in interstate commerce and that a local pawn shop sold the rifle to Austin on October 21, 1987. The pawn shop is a federally licensed firearms dealer. Investigators obtained from the pawn shop the Federal Firearms Questionnaire, ATF Form 4473, for the rifle. The ATF form identified Austin as the purchaser. The answer to question 8(b), which asks whether the purchaser has been convicted of a felony, was "no." This answer was false. In December 1988 Austin was indicted and charged with making a false statement in connection with the purchase of a firearm in violation of 18 U.S.C. § 922(a)(6) and unlawfully receiving a firearm in violation of 18 U.S.C. § 922(g)(1).

At trial, Austin admitted that he had prior felony convictions, that he purchased

---

1. The Honorable William G. Cambridge, United States District Judge for the District of Nebraska.

the rifle, and that he had completed the ATF form, including Question 8(b). Austin testified that he had purchased the rifle for his personal protection because he was living in a very dangerous section of Omaha. Although he knew that it was illegal for a convicted felon to possess a handgun, Austin testified that he thought it was not illegal for a convicted felon to possess a rifle. He testified that several police officers and prison inmates had told him this. Austin also testified that, before he purchased the rifle, he had discussed his criminal record with the sales clerk in the pawn shop and that the sales clerk had reassured him that it was not illegal for a convicted felon to purchase a rifle and had instructed him to answer "no" to all the questions on the ATF form. The sales clerk testified as a government witness. Although the sales clerk had no independent recollection of Austin's purchase of the rifle, the sales clerk acknowledged that he must have handled the transaction because he had completed the ATF form. The sales clerk testified that he would not sell a gun to anyone he knew was a convicted felon and denied that he had ever told any customer that it was lawful for a convicted felon to purchase a firearm.

Austin requested an entrapment by estoppel instruction. The district court refused to give the proposed instruction on the grounds that a federally licensed firearms dealer is not an agent of the government and, even assuming that a federally licensed firearms dealer is an agent of the government, Austin's reliance upon the statements of the sales clerk was not reasonable in light of the express terms of the ATF form and Austin's parole agreement, which specifically stated that he could not possess "dangerous" weapons. The jury found Austin guilty on both counts. Austin admitted that he had three prior Iowa felony convictions for second-degree burglary. The district court sentenced Austin to five years imprisonment on count I and fifteen years imprisonment on count II, to be served consecutively, pursuant to 18 U.S.C. § 924(e)(1), a special assessment of $100, and $70 for costs of prosecution. This appeal followed.

## PROPOSED ENTRAPMENT BY ESTOPPEL INSTRUCTION

Austin first argues the district court erred in refusing to give his proposed entrapment by estoppel instruction. He argues that, as a matter of due process, he could not be convicted of these firearms violations because he had been informed by an agent of the government, that is, the sales clerk of the pawn shop, that a convicted felon could lawfully purchase a rifle. Austin specifically argues the district court erred in holding that an employee of a federally licensed firearms dealer is not an agent of the government for purposes of the entrapment by estoppel defense, citing *United States v. Tallmadge*, 829 F.2d 767, 773–75 (9th Cir.1987). Austin also argues that he reasonably relied upon the sales clerk's affirmative assurances that a convicted felon could lawfully purchase a rifle.

The government argues the district court did not err in refusing to give the proposed instruction for several reasons. The government first argues that the proposed instruction improperly placed the burden of proof of entrapment by estoppel on the government and not the defendant. We agree. Criminal defendants are entitled to an instruction on their theory of defense if the proposed instruction is a correct statement of the applicable law and is supported by the evidence. *See, e.g., United States v. White*, 671 F.2d 1126, 1131 (8th Cir.1982); *United States v. Fuel*, 583 F.2d 978, 989 (8th Cir.1978), *cert. denied*, 439 U.S. 1127, 99 S.Ct. 1044, 59 L.Ed.2d 88 (1979). This proposed instruction erroneously placed the burden of proof of entrapment by estoppel on the government. Defendants have the burden of proof to establish that they were misled by the statements of a government official into believing that their conduct was lawful. *See, e.g., United States v. Smith*, 802 F.2d 1119, 1124 (9th Cir.1986); *United States v. Hsieh Hui Mei Chen*, 754 F.2d 817, 821–25 (9th Cir.), *cert. denied*, 471 U.S. 1139, 105 S.Ct. 2684, 86 L.Ed.2d 701 (1985).

The government also argues the proposed instruction was not a correct statement of the applicable substantive law because a federally licensed firearms dealers is not a government official, at least for purposes of the entrapment by estoppel defense. The government thus urges us to reject the Ninth Circuit's holding in *United States v. Tallmadge*. The government further argues that, even assuming that a federally licensed firearms dealer is a government official, the district court correctly refused to give the proposed instruction because there was no evidence that Austin's reliance upon the statements of the sales clerk was reasonable. For the reasons discussed below, we hold the district court did not err in refusing to give the proposed entrapment by estoppel instruction.

The defense of "[e]ntrapment by estoppel applies when an official tells the defendant that certain conduct is legal and the defendant believes the official." *United States v. Hsieh Hui Mei Chen*, 754 F.2d at 825. Despite its descriptive terminology, the defense of entrapment by estoppel "stems from the due process clause, not from the common law of contract, equity or agency." *United States v. Brady*, 710 F.Supp. 290, 295 (D.Colo.1989). For example, in *Raley v. Ohio*, 360 U.S. 423, 79 S.Ct. 1257, 3 L.Ed.2d 1344 (1959), the first Supreme Court case to articulate the entrapment by estoppel defense, four persons were convicted of contempt in state court for refusing to answer questions about Communist or subversive activities posed by a state legislative commission. The defendants had been told by the chairperson of the legislative commission that they could refuse to answer the questions because of the state privilege against self-incrimination. *Id.* at 425, 79 S.Ct. at 1259. In fact, the chairperson's advice was erroneous. *Id.* at 438–39, 79 S.Ct. at 1266–67. The Supreme Court held their convictions violated the due process clause and reversed. The Court stated that "[a]fter the Commission, speaking for the State, acted as it did, to sustain the Ohio Supreme Court's judgment [affirming the convictions] would be to sanction an indefensible

sort of entrapment by the State—convicting ... citizen[s] for exercising a privilege which the State had clearly told [them] was available to [them]." *Id.* at 426, 79 S.Ct. at 1260. *Accord United States v. Pennsylvania Industrial Chemical Corp.*, 411 U.S. 655, 93 S.Ct. 1804, 36 L.Ed.2d 567 (1973) (Army Corps of Engineers); *Cox v. Louisiana*, 379 U.S. 559, 85 S.Ct. 476, 13 L.Ed.2d 487 (1965) (chief of police); *United States v. Clegg*, 846 F.2d 1221, 1223 (9th Cir.1988) (U.S. Army officers and other government officials); *United States v. Timmins*, 464 F.2d 385, 386–87 (9th Cir.1972) (draft board officials); *United States v. Brady*, 710 F.Supp. at 294–95 (state judge) (citing cases, including cases involving erroneous advice given by judges). *But cf. Heckler v. Community Health Services of Crawford County, Inc.*, 467 U.S. 51, 63, 104 S.Ct. 2218, 2225, 81 L.Ed.2d 42 (1984) (erroneous interpretation of regulation by insurer administering federal program does not bar government's recovery of overpayment); *Federal Crop Insurance Corp. v. Merrill*, 332 U.S. 380, 383–85, 68 S.Ct. 1, 2–3, 92 L.Ed. 10 (1947) (county agricultural conservation committee); *United States v. Browning*, 630 F.2d 694, 702–03 (10th Cir. 1980) (customs official), *cert. denied*, 451 U.S. 988, 101 S.Ct. 2324, 68 L.Ed.2d 846 (1981).

It is the authority, whether apparent or actual, of the government official that is crucial to the entrapment by estoppel defense. *United States v. Tallmadge*, 829 F.2d at 777 & n. 2 (Kozinski, J., dissenting), *citing* Note, United States v. Barker: *Misapplication of the Reliance on an Official Interpretation of the Law Defense*, 66 Calif.L.Rev. 809, 825–26 (1978). However, the statements upon which Austin relies were not made by a government employee, much less a government official authorized to give advice or responsible for acting on behalf of the government. Federally licensed firearms dealers are private individuals. *United States v. Tallmadge*, 829 F.2d at 778 (Kozinski, J., dissenting). Despite the affirmative duty Congress has imposed upon federally licensed firearms dealers to enforce federal firearms laws at

the point of sale, *id.* at 774–75, we cannot agree that this role, or their federal license to sell firearms, is sufficient to transform them into government officials, at least for purposes of the entrapment by estoppel defense. *Id.* at 779–80 & n. 4 (Kozinski, J., dissenting).

We do not have before us the situation where a government official, such as a judge, a prosecuting attorney, an ATF official, or a probation officer, told a convicted felon that he or she could lawfully own a rifle. Such circumstances would present a different issue. For example, in *United States v. Tallmadge,* the defendant had been told that he could not carry a "concealable" gun by a state judge, the prosecuting attorney and his own attorney, in addition to the federally licensed firearms dealer. 829 F.2d at 769–70. Moreover, in that case whether or not the defendant could lawfully purchase a rifle, a "noncealable" gun, involved a complex legal question, that is, the legal effect under state law of the reduction of the defendant's felony conviction to a misdemeanor following the termination of probation. *Id.* at 770–71 (defense attorney believed that a felony conviction that had been reduced to a misdemeanor was no longer a felony conviction; the state argued that under applicable state law a person whose felony record is expunged is still required to disclose the prior felony conviction in any application for licensure). Austin cannot claim that he received similar advice from other government officials or that his status as a convicted felon for purposes of the federal firearms laws was ever in doubt.

We hold the district court did not err in refusing to give the proposed entrapment by estoppel instruction because the proposed instruction improperly placed the burden of proof on the government and because a federally licensed firearms dealer is not a government official, at least for purposes of the entrapment by estoppel defense.

## SUFFICIENCY OF THE EVIDENCE

■ Austin next argues the evidence was insufficient to support the jury verdict on count I, making a false statement in connection with the purchase of a firearm in violation of 18 U.S.C. § 922(a)(6). He argues that his false answer on the ATF form could not have been "likely to deceive" the sales clerk because he had already told the sales clerk that he was a convicted felon. We disagree. In reviewing a challenge to the sufficiency of the evidence, we review the evidence in the light most favorable to the jury verdict. *See, e.g., United States v. Peterson,* 867 F.2d 1110, 1115 (8th Cir.1989) (inadvertence analysis abrogated by *Horton v. California,* — U.S. ——, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990)). The sales clerk testified that he would not sell a gun to anyone who answered "yes" in response to any of the questions on the ATF form. This evidence, if believed by the jury, was sufficient to support the jury verdict that Austin's false answer was intended, or at least likely, to deceive the sales clerk about a fact material to the legality of the sale of the firearm.

## SENTENCE ENHANCEMENT

■ Austin next argues the district court erred in sentencing him pursuant to the sentence enhancement provision, 18 U.S.C. § 924(e)(1). Title 18 U.S.C. § 924(e)(2)(B)(ii) defines the term "violent felony" for purposes of 18 U.S.C. § 924(e)(1) as "any crime punishable by imprisonment for a term exceeding one year … that … is burglary, arson, or extortion, involves the use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another." Austin admits that he has three prior Iowa felony convictions for second-degree burglary, but he argues that he cannot be sentenced under 18 U.S.C. § 924(e)(1) because, under Iowa law, second-degree burglary is not a "violent felony."

The Supreme Court recently rejected this argument in *Taylor v. United States,* — U.S. ——, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990). The Court held that neither the language of the statute or the legislative history supported limiting construction of the term "burglary" to those burglaries

that involve especially dangerous conduct. *Id.* 110 S.Ct. at 2157–58. The Court held that Congress used "burglary" in "the generic sense in which the term is now used in the criminal codes of most States," that is, "an unlawful or unprivileged entry into or remaining in a building or other structure, with intent to commit a crime." *Id.* at 2158 (footnote omitted). Iowa's current definition of second-degree burglary corresponds in substance to the generic meaning of burglary.

The government used Austin's convictions for second degree burglary in 1981, 1983 and 1984 for sentence enhancement purposes. Before 1984, Iowa defined "burglary" as follows:

> Any person, having the intent to commit a felony, assault or theft therein, who, having no right, license or privilege to do so, enters an occupied structure *or area enclosed in such a manner as to provide a place for the keeping of valuable property secure from theft or criminal mischief,* such occupied structure not being open to the public, or who remains therein after it is closed to the public or after the person's right, license or privilege to be there has expired, or any person having such intent who breaks an occupied structure *or other place where anything of value is kept,* commits burglary.

Iowa Code Ann. § 713.1 (West 1979) (language deleted by 1984 amendment emphasized). The definitions of first and second degree burglary were unchanged. The pre–1984 definition thus defined burglary more broadly, that is, by including places other than buildings or structures, than the "generic" definition of burglary. However, because the record[2] indicates that each of Austin's convictions for second degree burglary involved the unlawful entry of a building or structure with the intent to commit a crime, the government could properly use these convictions for purposes of sentence enhancement under 18 U.S.C. § 924(e)(1). *See Taylor v. United States,* 110 S.Ct. at 2159–60.

Accordingly, the judgment of the district court is affirmed.

---

**2.** Each conviction involved the unlawful entry of a residence or building with the intent to commit either assault or theft. Exhibits U, W, Y.