UNITED STATES of America, Appellee,

v.

Norman Eugene FRENCH, also known as Jim French, Appellant.

UNITED STATES of America, Appellant,

v.

Norman Eugene FRENCH, also known as Jim French, Appellee.

Nos. 94–1933, 94–1952.

United States Court of Appeals, Eighth Circuit.

Submitted Oct. 12, 1994.

Decided Jan. 23, 1995.

Thomas W. Clayton, Sioux Falls, SD, argued, for appellant.

Thomas J. Wright, Asst. U.S. Atty., Sioux Falls, SD, argued, for appellee.

Before FAGG, Circuit Judge, ROSS, Senior Circuit Judge, and MAGILL, Circuit Judge.

MAGILL, Circuit Judge.

Norman Eugene French appeals his conviction and sentence for thirty-two counts of converting mortgaged property in violation of 18 U.S.C. § 658. The government cross-appeals the sentence, arguing that the district court[1] erred in giving French credit for a state term of imprisonment and that a state perjury conviction should have been included in French's criminal history calculation. We affirm.

## I. BACKGROUND

French is a sixty-plus-year-old man who has spent the majority of his life farming in and around Beadle County, South Dakota. French was a successful farmer, and he branched out into a trucking business that also proved successful. He began receiving loans from the Farmers Home Administration (FmHA) in 1972, pledging certain cattle as security for the FmHA loan.[2] At this time, Gerald Fossum was the FmHA's Beadle County Supervisor. The terms of FmHA loans contain significant restrictions on the borrower. For present purposes, the most significant of these restrictions requires French to report all sales of FmHA security to the FmHA and to obtain from the FmHA a release for any funds acquired from such sales that are to be spent (collectively, the "reporting requirement"). Fossum testified that he discussed the reporting requirement with French, and that French appeared to understand his obligations. Fossum denied telling French anything to the contrary. French reported cattle sales to the FmHA and complied with other FmHA requirements throughout Fossum's tenure as county supervisor.

Michael Madsen replaced Fossum as Beadle County Supervisor in 1983. In 1984, Madsen sent a "Beadle County Bulletin" to FmHA borrowers, including French, reminding the borrowers of the reporting requirement. The bulletin stated that "[a]ll checks received from sale of farm production must

---

1. The Honorable John B. Jones, Chief Judge, United States District Court for the District of South Dakota.

2. FmHA practice is to employ a promissory note and a security agreement, often creating a security interest in crops or livestock, in making the loans.

be brought to FmHA office before the money is spent."

In 1985, French's promissory notes were rewritten. At this time, French also executed four new promissory notes totalling $316,272.50, all secured by livestock. In 1986, a new security agreement was executed to secure the promissory notes that were renegotiated in 1985. As rewritten, this security agreement provided for an interest in:

> All livestock (except livestock and poultry kept primarily for subsistence purposes) ... used for commercial purposes ... now owned or hereafter acquired by Debtor, together with all increases, replacements, substitutions, and additions thereto, including but not limited to ... 306 Calves, Breed Mixed, Color Mixed, Weight, average weight 1100#, one-year-old.

Tr. at 98–99. This security agreement (and all others previously executed) contained the following provision:

> SECURED PARTY HAS INFORMED DEBTOR THAT DISPOSAL OF PROPERTY COVERED BY THIS SECURITY AGREEMENT WITHOUT THE CONSENT OF THE SECURED PARTY ... MAY CONSTITUTE A VIOLATION OF FEDERAL CRIMINAL LAW.

Tr. at 102. After French's loans were restructured, they were all cross-collateralized by a mortgage of French's real property and a mortgage of his livestock.[3] William Hupp, who succeeded Madsen as County Supervisor, testified that the reporting requirement was carefully explained to all borrowers, including French. Hupp also testified that he was aware of no instance in which French was told anything to the contrary.

After a dispute with the FmHA in 1986, French ceased cooperating with the agency. He refused to provide the required paperwork[4] to the FmHA and also stopped making payments on the loans. French reported his last cattle sale in April 1987.

In 1987, French became involved in bitter and protracted divorce proceedings. In 1991, the state court judge handling the divorce case ordered French to vacate his farm and to permit his wife to move onto it. French immediately filed for Chapter 12 bankruptcy, and in so doing regained possession of the farm. (This Chapter 12 filing was later converted to Chapter 7.) The divorce proceedings were finally resolved in 1992, but not before French had perjured himself. French was convicted of perjury in South Dakota state court. *See State v. French,* 509 N.W.2d 698 (S.D.1993). He was sentenced to five years imprisonment, and he served ten months (January 8 to November 8, 1993). French was then released from the penitentiary on parole.

Between 1986 and 1991, FmHA agents repeatedly contacted French in an attempt to obtain his cooperation. French remained uncooperative, although he permitted the FmHA to conduct site inspections. As a result of inconsistencies discovered during a 1988 inspection, the FmHA began to suspect that French was engaging in unreported cattle sales. During a 1989 inspection, French was confronted with the inconsistencies. French became uneasy and refused to sign an FmHA Form 1962–1 disclosing the sales unless the FmHA agreed to allow him to use the proceeds from the sales for operating expenses rather than for loan repayment.

Between 1988 and 1991, French engaged in thirty-two different transactions involving a total of 542 head of cattle worth approximately $335,272.08. French admitted that these transactions involved cattle upon which the FmHA claimed a mortgage. However, French never reported any of these sales nor obtained permission from the FmHA to use the proceeds, and he repeatedly requested that the FmHA's name be omitted from checks issued for the cattle sales. These thirty-two transactions provide the basis for the thirty-two counts of conversion of mortgaged property of which French was convict-

---

3. Testimony at trial mentioned only that the loans were secured by cattle, including after-acquired cattle. Tr. at 98–102. Testimony at sentencing indicated that the FmHA loans were cross-collateralized after they were restructured. Sentencing Tr. (March 28, 1994) at 4, 12.

4. In addition to reports of sales of FmHA security, the FmHA requires borrowers to submit various reports which the FmHA uses in deciding whether to release funds derived from such sales.

ed. French was also convicted of perjury and bankruptcy fraud stemming from false statements made during the bankruptcy proceedings. French does not appeal the perjury and fraud convictions. French was sentenced in federal court on March 28, 1994. He owed $507,423.83 on the loans at the time of sentencing.

## II. DISCUSSION

French makes four arguments on appeal. First, he argues that the government is estopped from prosecuting him because FmHA employees are guilty of "affirmative misconduct" upon which he relied. Second, French argues that the evidence of "intent to defraud" produced by the government was insufficient to support the conviction. Third, French argues that the district court clearly erred in its calculation of the amount of loss for purposes of U.S.S.G. § 2B1.1. Finally, French claims that the district court abused its discretion in awarding $50,000 restitution (subject to offset following French's Chapter 7 liquidation) to the FmHA.

The government cross-appealed, arguing (1) that the district court erred when it gave French credit for the time served in connection with French's state perjury conviction; and (2) that French's state perjury conviction should have been used in the calculation of his criminal history. We address these arguments seriatim.

### A. Is the government estopped from prosecuting French?

■ French makes two estoppel arguments,[5] both of which may be quickly disposed of. We have not decided whether equitable estoppel is available against the government in a civil case. *McDermott v. United States*, 760 F.2d 879, 882 (8th Cir.

5. Although French frames these arguments in terms of estoppel, they also go to intent to defraud, as French recognizes. Our analysis of the sufficiency of the evidence below takes into consideration the fact that there is a dispute over whether misrepresentations were made.

6. Although French does not explicitly do so, his argument may be characterized as an "entrapment by estoppel" defense. We have recognized this defense. *See, e.g., United States v. Austin*, 915 F.2d 363, 365–67 (8th Cir.1990), *cert. denied,*

1985). We note that in a civil case, "the public's interest [i]s far less than its interest ... in enforcement of the criminal law." *United States v. Garth*, 773 F.2d 1469, 1475 (5th Cir.1985), *cert. denied,* 476 U.S. 1140, 106 S.Ct. 2246, 90 L.Ed.2d 693 (1986).[6] However, even assuming that estoppel is available in a criminal case such as this, French's estoppel defense fails.

■ First, French asserts that he was told by one or more FmHA representatives that he did not need to report cattle sales so long as his "base herd" remained intact. The short answer to this argument is that there was conflicting evidence as to whether any such statements were made. This is a classic credibility contest, and credibility determinations are for the jury. *United States v. Turk*, 21 F.3d 309, 312 (8th Cir.1994). The jury chose to believe three FmHA county supervisors and the numerous documents that confirmed their testimony over the uncorroborated testimony of a convicted perjurer who was accused of making seven more untrue statements under oath. Moreover, even were the jury to believe that Fossum represented to French that reports were unnecessary, numerous subsequent discussions and French's own conduct indicate that French should have known that the FmHA later considered reporting necessary. In addition, the subsequent changes in personnel, in the note and in the security agreement make any pre–1983 representation by Fossum largely irrelevant.

■ Second, French argues that the FmHA's conduct during its inspections led him to believe that he had not impaired the FmHA's collateral (the base herd), and thus was not required to report the sales. The FmHA's silence, if construed as tacit approval of French's conduct, does not rise to the

499 U.S. 977, 111 S.Ct. 1626, 113 L.Ed.2d 722 (1991). However, an entrapment by estoppel defense requires the defendant to prove that he was "misled by the statements of a government official into believing that [his] conduct was lawful." *United States v. LaChapelle*, 969 F.2d 632, 637 (8th Cir.1992); *accord Austin*, 915 F.2d at 366. Because there was conflicting evidence as to whether any such statements were made, this is a matter for the jury to decide.

level of "affirmative misconduct." *Cf. Garth,* 773 F.2d at 1474–75 (FmHA "customary practice" of lax enforcement did not give rise to estoppel). Estoppel is therefore unavailable against the prosecution. *McDermott,* 760 F.2d at 882 (estoppel against the government requires affirmative misconduct).

## B. Did the government provide sufficient evidence of intent to defraud?

 In evaluating a challenge to the sufficiency of the evidence, our role is very limited. We review the evidence only to determine whether a rational trier of fact could find all the elements of the crime beyond a reasonable doubt. *United States v. Fetlow,* 21 F.3d 243, 247 (8th Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 456, 130 L.Ed.2d 365 (1994). In evaluating the sufficiency of the evidence, we view the evidence in the light most favorable to the government. *United States v. Zerba,* 21 F.3d 250, 252 (8th Cir.1994). The government receives the benefit of all reasonable inferences from the evidence. *Id.*

 Intent to defraud is an essential element of a § 658 violation. *United States v. Williams,* 935 F.2d 1531, 1535 (8th Cir.1991), *cert. denied,* 502 U.S. 1101, 112 S.Ct. 1189, 117 L.Ed.2d 431 (1992). The instruction given by the trial court came virtually verbatim from *United States v. Johnson,* 956 F.2d 197 (8th Cir.1992), where we approved an instruction stating that:

> [t]o act with 'intent to defraud' means to act knowingly and with the intent to deceive or cheat, ordinarily for the purpose of causing a financial loss to another and bringing about a financial gain to one's self.

*Id.* at 200. We hold that the government provided sufficient evidence from which a rational trier of fact could find that French acted with intent to defraud the FmHA.

There was evidence that French had been informed of the reporting requirement, that he was aware of it, and that he had complied with the reporting requirement in the past.

After a dispute with the FmHA (from which motive could be inferred), French ceased all cooperation and repeatedly sold cattle without reporting the sales. French actively sought to exclude the FmHA as a payee on checks issued in connection with these sales. From this evidence, a rational trier of fact could infer that French wished to deceive the FmHA as to the nature and state of its security (the cattle) in order to convert the value of the security to his own use. Moreover, French ceased making payments on the FmHA loans in 1986. A rational trier of fact could have inferred that French did not report his later sales because he sought to evade his repayment obligations and to pocket the proceeds of the sales. Thus, a rational trier of fact could have found that French acted with the intent to defraud the FmHA.

## C. Did the district court clearly err in determining that the amount of the FmHA's loss exceeded $100,000?

 Amount of loss is a factual determination that we review only for clear error. *United States v. West,* 942 F.2d 528, 532 (8th Cir.1991). Amount of loss need not be determined with precision. U.S.S.G. § 2B1.1, comment. (n. 3). The district court determined only that the amount of loss exceeded $100,000.

The commentary to U.S.S.G. § 2B1.1 defines loss as the "value of the property taken, damaged, or destroyed." U.S.S.G. § 2B1.1, comment. (n. 2). Application note 2 also provides that the fair market value of the lost property is ordinarily the measure of loss. Here, the collateral that was converted sold for $331,000 at a livestock sale. This figure, therefore, closely approximates the fair market value of the converted collateral. Even if the FmHA's loss of $331,000 of collateral does not result in a $331,000 "out-of-pocket" loss to the FmHA, or if French decided to spend his ill-gotten gain by purchasing other cattle, it remains unchanged that French "took" $331,000 worth of collateral, and that these actions increased the FmHA's risk of loss.[7] *See United States v. Liskiewicz,* No.

---

7. For this reason, *United States v. Johnson,* 993 F.2d 1358 (8th Cir.1993), is distinguishable. In *Johnson,* the defendant "took" $88,483 from a

bank, and "misapplied" some $318,915 more. In *Johnson,* we found that the amount of loss was $88,483 rather than $407,398 because the

94–1068, slip op. at 2, 1994 WL 317135 (8th Cir. July 1, 1994). Application note 2 addresses a similar situation in which a check or money order is stolen but never cashed. The note states that in such a case, "the loss is the loss that would have occurred if the check or money order had been cashed," not the amount of the payee's actual out-of-pocket loss, which would be zero. Finally, we reject French's arguments that we should apply the net loss approach because there is no indication that French acted with the requisite mixed intent at the time he began to sell cattle in unreported transactions.

After carefully reviewing the record, we find that the district court did not clearly err when it found that French's sales of $331,000 worth of collateral on cross-collateralized loans resulted in a loss of more than $100,-000.[8] French owed $507,423.83 on the loans at the time of sentencing. French's actions impaired the collateral on the entire loan package, and the fact that the FmHA has recovered slightly less than $200,000 does not change the fact that French "took" property with a fair market value of $331,000, or that this conversion resulted in increased risk to the FmHA.

**D. Was the order of $50,000 restitution an abuse of discretion?**

■■■ Under 18 U.S.C. § 3663(a)(1), the district court was authorized to impose restitution as part of French's sentence. We review the district court's imposition of restitution only for abuse of discretion. *United States v. Lively*, 20 F.3d 193, 200 (6th Cir. 1994). We hold that the district court did not abuse its discretion when it ordered $50,-000 restitution.

■■■ When imposing restitution, a district court must consider the amount of loss to the victim, the financial resources of the

defendant, the financial needs and earning ability of the defendant, and any other factors that "the court deems appropriate." 18 U.S.C. § 3664(a). The government bears the burden to prove the amount of loss. The district court considered the amount of loss due to French's sale of collateral ($331,000), and discounted this due to the fact that French did not owe this full amount on loans secured solely by cattle. Thus, the district court arrived at a figure of "in excess of $100,000." Sentencing Tr. at 38. If French has any remaining obligation to the FmHA after his liquidation, this fact may be traced directly to French's conversion and dissipation of $331,000 of the FmHA's collateral. Thus, the restitution is directly related to the conviction and not, as French contends, to the nonpayment of notes.[9]

■■■ The court also considered the factors relating to French's financial status. French bears the burden to prove financial status. The court noted that French is involved in a Chapter 7 liquidation and that as a consequence of this liquidation, his obligations to the FmHA will be extinguished to the extent of his assets. The district court in its discretion also considered several other relevant factors such as French's age, health and his potential recovery. The sentencing transcript indicates that the district court considered the relevant factors. After considering these factors, the district court did not order restitution of the full $331,000, or even $100,-000, loss that was due to French's conduct. The district court did not abuse its discretion in so doing.

**E. Did the district court clearly err when it credited French with time served on a state perjury sentence while French was on parole?**

■■■ U.S.S.G. § 5G1.3(b) provides that:

---

bank was never at any risk of losing the $318,-915. Here, French's actions have increased the FmHA's risk of loss on the entire half million dollar loan package.

8. Although French argues that he has satisfied the original $180,000 secured by cattle, he simply ignores the fact that all the loans were cross-collateralized.

9. There is, of course, a relation between the nonpayment of the notes and the offense of conviction. French's conversion of mortgaged property increases the FmHA's risk on the loans the instant that the conversion occurs. However, the FmHA does not suffer an actual "out-of-pocket" loss from the conversion until there is a default on the note, an attempted foreclosure, and a deficiency.

If ... the undischarged term of imprisonment resulted from offense(s) that have been fully taken into account in the determination of the offense level for the instant offense, the sentence for the instant offense shall be imposed to run concurrently to the undischarged term of imprisonment.

The commentary to 5G1.3 makes it clear that:

[w]hen a sentence is imposed pursuant to [§ 5G1.3](b), the court should adjust for any term of imprisonment already served as a result of the conduct taken into account in determining the sentence for the instant offense.

U.S.S.G. § 5G1.3, comment. (n. 2). French's sentence is based upon his "relevant conduct." *See* U.S.S.G. § 1B1.3. Thus, whether the district court erred in giving French credit for time served in connection with the state perjury conviction depends upon two determinations. First, was French subject to an undischarged term of imprisonment in connection with the state conviction? Second, was French's perjury in the South Dakota divorce court part of his relevant conduct for which the federal sentence was imposed?

We turn first to the issue of whether French was subject to an undischarged term of imprisonment. As this issue involves construction of the guidelines, we review de novo. *United States v. Gullickson,* 981 F.2d 344, 346 (8th Cir.1992). South Dakota law is part of the facts to which we apply federal law interpreting the term "undischarged" as used in the Sentencing Guidelines. South Dakota law provides that "Parolees shall at all times be considered confined, in the legal custody of the department of corrections...." S.D. Codified Laws Ann. § 24–15–13 (Supp.1994). We find that the State of South Dakota has retained custody of French until the termination of his ten-year sentence. We also find that South Dakota's retention of custody means that French is subject to an "undischarged term of imprisonment" within the meaning of U.S.S.G. § 5G1.3(b).[10]

We next consider whether French's state court perjury conviction was part of the same relevant conduct as the charged conduct for which French was sentenced. The district court found that the perjury before the divorce court was relevant conduct because it was part of the same course of conduct that resulted in the federal fraud and perjury convictions. We find no clear error. *United States v. Blumberg,* 961 F.2d 787, 792 (8th Cir.1992) (standard of review). Although there were different victims, both the state and the federal convictions are based upon actions taken by French during the same time period, in the same general geographic area, for the same purpose, as part of a common plan to preserve his farming operation, and involving the same set of farm assets. Accordingly, we affirm the district court's crediting French with time served in connection with his state conviction.

**F. Did the district court clearly err in failing to include French's perjury conviction when calculating his criminal history category?**

Because the district court considered French's perjury in divorce court in setting the offense level, it properly excluded the conviction from its criminal history calculation. *Blumberg,* 961 F.2d at 792.

## III. CONCLUSION

Because we find no "affirmative misconduct" and we find a factual dispute that was resolved by the jury, we reject French's contention that the government is estopped from prosecuting him. We also reject French's contention that the evidence was insufficient to support the conviction. We find no clear error in the district court's calculation of the amount of loss for purposes of U.S.S.G. § 2B1.1, nor do we find an abuse of discretion in the order of $50,000 restitution (subject to offset following French's Chapter 7 liquidation) to the FmHA. We have also reviewed the other arguments made by French and find them to be without merit.

---

10. The government's reliance upon *United States v. Ogg,* 992 F.2d 265 (10th Cir.1993), is therefore misplaced. *Ogg* involved a release without parole and the accompanying continued custody. *Gullickson,* 981 F.2d at 344, is also inapposite, as it involved interpretation of § 5G1.3(c).

Accordingly, we affirm the district court on all issues appealed by French.

Because we find that French was subject to an undischarged term of imprisonment, and that the district court did not clearly err in considering the state perjury conviction part of the same relevant conduct as the charged offenses, we hold that the district court did not err when it gave French credit for the time served in connection with the state perjury conviction and when it held that French's state perjury conviction should not be used in the calculation of his criminal history. Accordingly, we affirm the district court on all matters that are the subject of the cross-appeal.

French's conviction and sentence are in all respects affirmed.