**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Sandra L. PHIPPS, Defendant–Appellant.**

**No. 95–1283.**

United States Court of Appeals, Seventh Circuit.

Argued Sept. 6, 1995.

Decided Oct. 6, 1995.

Larry Wszalek (argued), Office of the United States Attorney, Madison, WI, for plaintiff-appellee.

Mark E. Colbert (argued), Waunakee, WI, for defendant-appellant.

Before CUDAHY, FLAUM, and EASTERBROOK, Circuit Judges.

EASTERBROOK, Circuit Judge.

Sandra Phipps preyed on the old and infirm. Hired by John McEwen to provide home nursing services for his wife Barbara, Phipps assumed control of the couple's finances when John was hospitalized. In addition to diverting $21,000 to her own account, Phipps stole $62,000 worth of the family jewelry. After both McEwens died, Phipps was hired as a home nurse by Gertrude Kemper, then 100 years old. By the time Kemper died eleven months later, Phipps had purloined more than $350,000 worth of her jewels.

Phipps sold much of the pelf but was caught when a jeweler gave pictures of some pieces to relatives and employees of the McEwen and Kemper families. A search of Phipps' house turned up her former employers' belongings. Wisconsin prosecuted Phipps for possessing stolen property and sentenced her to 14 months' confinement in a prison (11 months of which had been served awaiting trial), followed by home detention with an electronic monitoring bracelet. Federal prosecutors thought this an unduly light sentence for crimes against vulnerable victims and charged Phipps with a violation of 18 U.S.C. § 2315 (forbidding the possession, receipt, or sale of stolen property that has crossed state borders). She pleaded guilty and was sentenced to 32 months' imprisonment, a period that reflected full credit for her 14 months' incarceration in Wisconsin. By the time of her federal sentencing, Phipps had been in home detention for a little more than a year and asked for a further reduction, on this account, to 20 months of federal custody. The district court refused, precipitating this appeal.

Section 5G1.3(b) of the Sentencing Guidelines provides that a judge must give credit for an "undischarged term of imprisonment"

attributable to offenses "fully taken into account in the determination of the offense level for the instant offense". The activity leading to the Wisconsin conviction was "fully taken into account in the determination of the offense level for" the federal crime. But is home detention a "term of imprisonment"? Phipps insists that it is, contending that Wisconsin treats the entire course of incarceration and detention as a unified period of "imprisonment" for purposes of its "intensive sanctions" program. This answer depends on a belief that state law supplies the definition of a "term of imprisonment". One court of appeals, relying exclusively on state law, has held that parole in South Dakota is part of a "term of imprisonment" for purposes of § 5G1.3(b). *United States v. French,* 46 F.3d 710, 717 (8th Cir.1995). That court did not explain why the meaning of a term in the Sentencing Guidelines presents a question of state rather than federal law. Other courts—equally without explanation—have defined the term as a matter of federal law. E.g., *United States v. Bernard,* 48 F.3d 427, 430–32 (9th Cir.1995).

■ Language in federal statutes and regulations usually has one meaning throughout the country. Even when the statute or rule uses a term such as "conviction" that refers to state proceedings, the definition of that term is federal, see *Dickerson v. New Banner Institute, Inc.,* 460 U.S. 103, 103 S.Ct. 986, 74 L.Ed.2d 845 (1983); *United States v. Gomez,* 24 F.3d 924, 930 (7th Cir. 1994), unless Congress specifies the use of state law—something it does only rarely, see 18 U.S.C. § 921(a)(20); *Beecham v. United States,* —— U.S. ——, 114 S.Ct. 1669, 128 L.Ed.2d 383 (1994); *United States v. Glaser,* 14 F.3d 1213 (7th Cir.1994). Cf. *Butner v. United States,* 440 U.S. 48, 55, 99 S.Ct. 914, 918, 59 L.Ed.2d 136 (1979); *Eckstein v. Balcor Film Investors,* 8 F.3d 1121, 1126–27 (7th Cir.1993); *United States v. Einum,* 992 F.2d 761 (7th Cir.1993). Section 5G1.3 is designed to reduce disparities in punishment. A person who steals $450,000 from elderly victims should receive the same total punishment whether or not she has been convicted in a state court before the federal prosecution, and no matter what state imposed the prior punishment. The sentence calculated under the Guidelines for this conduct is 46 months in a prison (an important qualification to which we return), so the objective can be achieved by subtracting from the federal sentence any time already served (or to be served) in state prison. If one state decided that financial sanctions are sufficient for property crimes, no one would suppose that this produced a subtraction under § 5G1.3(b) on the ground that a heavy fine can be as severe as a period in the pokey. So too with other sanctions. Suppose Wisconsin concluded that a year in Chicago equates to six months in jail and grouped banishment with home confinement in its "intensive sanctions" program. Suppose the state of Utopia deemed penitence to be equivalent to penitentiaries and sentenced persons to "moral imprisonment" for some time, during which they were to be remorseful. That approach—one fundamentally disagreeing with the philosophy behind the Guidelines—would not lead a federal court to subtract from the 46 months' federal imprisonment the time Utopia instructed the offender to feel sorry for his victims. That step would lead to divergent aggregate sanctions depending on which state the crime occurred in, undermining the most basic purpose of the Sentencing Reform Act of 1984 and the Guidelines themselves. The meaning of "imprisonment" therefore is a question of federal law, one depending on what states *do* rather than on the labels they attach to their sanctions. Uniformity is an elusive goal. For example, a state sentence of 24 months in prison plus 10 years of house arrest plus a fine of $1 million may exceed 46 months' imprisonment in severity, and adding 22 federal months to the 24 state months not smooth out treatment of similar offenses across jurisdictions. Still, the regular use of a federal definition of "imprisonment" is apt to promote uniformity although it cannot assure its attainment.

Section 5G1.3 is one among several provisions requiring sentence credits. To take another, 18 U.S.C. § 3585(b) extends credit "for any time [the accused] has spent in official detention prior to the date sentence commences". Both Phipps and the prosecutor cited opinions interpreting § 3585(b) interchangeably with cases under § 5G1.3, and

**162**

if "term of imprisonment" means the same thing as "official detention" we can abbreviate this opinion—for *Reno v. Koray,* —— U.S. ——, 115 S.Ct. 2021, 132 L.Ed.2d 46 (1995), authoritatively defines the latter term. Equating the two would be inappropriate, however, and not only because the language is so different. *Koray* concluded that "official detention" draws color from both the text and the functions of the Bail Reform Act of 1984, of which § 3585(b) is a part. Section 5G1.3 is embedded in a different set of rules, and the phrase "term of imprisonment" must be understood against the background of the Guidelines rather than the Bail Reform Act. We put *Koray* to one side, therefore, and concentrate on the Sentencing Guidelines.

■ "Imprisonment" is a word used throughout the Guidelines to denote time in a penal institution. Section 4A1.2(b) defines "sentence of imprisonment" as a "sentence of incarceration" for the purpose of computing the defendant's criminal history. Section 7B1.3(d) permits a judge to require a recidivist to serve a period of "home detention" in addition to a period of "imprisonment," showing that the Guidelines distinguish the two. Section 5C1.1 prescribes different kinds of sentences appropriate to offenses of different levels of gravity. Less serious offenses, those falling within Zone A of the sentencing grid, may be dealt with by sentences that do not include imprisonment. More serious offenses may include a limited period of home detention. Persons in Zone B must serve at least a month in prison; the remainder of the guideline range may be allocated among alternatives to prison, including home detention. Persons in Zone C must spend at least half of the minimum guideline range in prison; again the residue may be served in alternatives. Finally, for defendants in Zone D, custodial detention is required for the entire minimum of the guideline range; options such as home detention are available only for punishment exceeding that minimum. "Home detention" differs from "imprisonment" throughout the Guidelines' schema. It is not "imprisonment" but is a "substitute for imprisonment." See § 5B1.4(b)(20). Cf. *United States v. Swigert,* 18 F.3d 443, 445–46 (7th Cir.1994) (reading a plea agreement's use of "term of imprisonment" in light of

§ 5C1.1 to refer to time in a penitentiary). We know from § 5C1.1 that this substitute cannot be used to satisfy the lower bound of a Zone D sentence. The Guidelines place Phipps in Zone D.

Unless something in § 5G1.3 overrides this understanding, Phipps's sentence is just right. Section 5G1.3 is not an entirely satisfactory drafting exercise. Judge Boudin narrates some of the problems in *United States v. Gondek,* 65 F.3d 1 (1st Cir.1995), and this case exposes others. Start with the question why we are even considering § 5G1.3. The section applies only to persons "subject to an undischarged term of imprisonment" at the time of federal sentencing. "Undischarged" means "ongoing." See *United States v. Yahne,* 64 F.3d 1091, 1095–97 (7th Cir.1995). But if, as the prosecutor argues (and the district court held), Phipps completed her "term of imprisonment" when she entered home detention, then § 5G1.3 does not govern, and Phipps would not receive credit even for the 14 months of jail time in Wisconsin. Her only boon would be a reduction in her criminal history score to avoid double counting (criminal conduct counted as part of the federal offense is not included in criminal history). She could seek a downward departure by analogy to § 5G1.3 but would not be entitled to one. *United States v. Blackwell,* 49 F.3d 1232, 1240–42 (7th Cir.1995). Why should so much turn on whether the federal court imposes sentence one day before or after the state term of imprisonment concludes? The Background Note to § 5G1.3 explains that the section is designed "to result in an appropriate incremental punishment for the instant offense that most nearly approximates the sentence that would have been imposed had all the sentences been imposed at the same time." See *United States v. McFarland,* 37 F.3d 1235 (7th Cir. 1994); *United States v. Lechuga,* 975 F.2d 397 (7th Cir.1992); § 5G1.3 Application Note 3. That goal cannot be achieved if § 5G1.3 is limited in application to persons still in the state donjon when the federal judge pronounces sentence.

Because the prosecutor has not appealed, we need not decide whether § 5G1.3(b) should have been applied in the first place.

The infelicities in § 5G1.3 make this an open question by implying that one should not take "undischarged term of imprisonment" strictly. Section 5G1.3(a) says that if the *offense* was "committed while the defendant was serving a term of imprisonment (including work release, furlough, or escape status)" the federal sentence must run consecutive to the state sentence. Thus § 5G1.3 may have some application if the federal sentence comes after the end of state imprisonment. At the same time, however, "imprisonment" is limited to institutional time—for work release, furlough, and escape status all are periods of freedom that are supposed to be followed by time behind bars, with a guard outside the door. Time in escape status would be an undischarged term of imprisonment for the purpose of activating the rule but not for the purpose of sentence credit. So even though "undischarged term of imprisonment" sounds like a subset of all terms of imprisonment, the way § 5G1.3 uses these terms it may not be hopelessly contradictory to say—as the district judge did say—that on the date of sentencing Phipps was serving an "undischarged term of imprisonment" for the purpose of activating § 5G1.3 (and providing credit for time in prison) but was not serving a "term of imprisonment" (and therefore was not entitled to credit for time in home detention). Like the first circuit, we believe that § 5G1.3 can use editorial attention. The thrust of this provision is clear enough for today's case, however. Its objective of evening out punishment for similar offenses would be frustrated by giving Phipps credit for time in home detention, because then her total incarceration would be substantially less than if she had received a federal sentence alone—for recall that the judge could not have permitted Phipps, as a Zone D defendant, to serve any of the prescribed minimum term in home detention. Phipps was entitled to no more than 14 months' credit against the time required by the Sentencing Guidelines.

AFFIRMED.