**UNITED STATES of America**

v.

**Vincent ROSADO, Defendant.**

**No. S501CR74–12 (SAS).**

United States District Court,
S.D. New York.

Jan. 7, 2003.

Sam A. Schmidt, New York, New York, for Defendant.

David Rody, Assistant United States Attorney, New York, New York, for the Government.

### SENTENCING OPINION

SCHEINDLIN, District Judge.

On February 27, 2002, Vincent Rosado pled guilty to distribution of heroin in violation of 21 U.S.C. § 841(b)(1)(C). Rosado was sentenced on December 19, 2002. I write now to explain the reasons for that sentence.

### The Offense Conduct

The following fact recitation is drawn from the Presentence Report dated September 16, 2002. Vincent Rosado was a member of the Hughes Boys organization (the "Hughes Boys"), a gang that distributed large quantities of crack, cocaine and heroin in the Tremont section of the Bronx. In March of 1999, the New York Police Department ("NYPD") commenced an investigation of the Hughes Boys which was later joined by the Drug Enforcement Agency ("DEA"). According to the NYPD and DEA, the Hughes Boys sold large quantities of crack, cocaine and heroin on a daily basis. Most of these sales occurred at a number of drug spots located within a five-block radius of Hughes Avenue and 178th Street (the "Hughes Avenue Spot").

During the investigation, Rosado personally sold or participated in the sale of heroin to an NYPD undercover agent in the vicinity of the Hughes Avenue Spot. For example, on September 30, 1999, Rosado sold an undercover agent ten glassine envelopes of heroin for $100. Rosado was arrested on July 10, 2001. Rosado subsequently stipulated to the distribution of at least 100 grams but less than 400 grams of heroin.

### Offense Level Computation [1]

Pursuant to the terms of the written Plea Agreement, the base offense level is 26 pursuant to § 2D1.1(c)(7), corresponding to more than 100 grams but less than 400 grams of heroin. This level is decreased by 3 levels (to 23), pursuant to § 3E1.1(a) and (b)(2), based on Rosado's acceptance of responsibility, resulting primarily from his guilty plea.

### Criminal History Category

Rosado has one criminal history point based on a 1999 conviction for the criminal possession of marijuana for which he was sentenced to a conditional discharge. Thus, he is placed in Criminal History Category I.

---

1. Unless otherwise noted, all references to " § __" are to the United States Sentencing Guidelines effective November 2, 2002.

### Applicable Guidelines Range

The guideline range at 23/I is 46–57 months in custody.

Downward Departures

### A. Credit for Time Served on State Sentence

In a pre-sentence submission, Rosado argued that he should receive full credit for time served on a state court conviction based on conduct which was fully taken into account (as relevant conduct) in determining the offense level for the instant offense. He served seven months in state prison, was released on early parole, and has now served twenty-one months on that parole. In the alternative, Rosado requested a downward departure for the seven months spent in prison.

In order to evaluate this argument, it is necessary to lay out the relevant chronology: Rosado was arrested on state charges on March 19, 1999. He was released on bail and was subsequently arrested on federal charges in September of 1999. He was again released on bail. He was convicted in the state court on July 24, 2000, and sentenced in September of 2000 to two to four years imprisonment. He then served seven months in prison until April, 2001, when he was released to early parole. He was remanded to federal custody on February 27, 2002, following his guilty plea to the instant charge. Accordingly, Rosado was on parole approximately eleven months when he effectively began to serve his federal sentence. His parole continues until September, 2004.

Section 5G1.3(b) addresses the sentence of a defendant subject to an undischarged term of imprisonment. It provides, in relevant part, as follows:

> If ... the *undischarged term* of imprisonment resulted from offense(s) that have been fully taken into account in the determination of the offense level for the instant offense, the sentence for the instant offense shall be imposed to run concurrently to the undischarged term of imprisonment.

§ 5G1.3(b) (emphasis added). Application Note 2 further provides:

> When a sentence is imposed pursuant to subsection (b), the court should adjust the sentence for any period of imprisonment already served as a result of the conduct taken into account in determining the guideline range for the instant offense if the court determines that period of imprisonment will not be credited to the federal sentence by the Bureau of Prisons....

As noted, Rosado's prior state court sentence was fully taken into account in determining his current offense level. The question, then, is whether defendant is now serving an "undischarged term of imprisonment" given the fact that he remains on state parole. The answer to that question turns on the meaning of the term "imprisonment."

Defendant argues that in New York, parole is the equivalent of imprisonment. *A fortiori*, defendant's state sentence is, as yet, undischarged. Defendant relies on an Eighth Circuit case, *U.S. v. French*, 46 F.3d 710 (8th Cir.1995), which held that because South Dakota law defines parole as being confined in the legal custody of the Department of Corrections, a defendant on parole was still serving an undischarged term of imprisonment for purposes of § 5G1.3(b). Here, defendant notes that New York defines parole as part of the sentence of imprisonment and that parolees (unlike probationers) are under the control of prison authorities.[2] *See*

---

**2.** Defendant further distinguished parole from probation, supervised release and home detention, stating:

> Parole is not a sentence. Parole is simply the status of a prisoner who has been sentenced to a period of incarceration. He is

New York Penal Law § 70.40(1)(a) ("Release on parole shall be in the discretion of the state board of parole, and such person [parolee] shall continue service of his sentence or sentences while on parole...").

The Government, in turn, cites several circuit court decisions that have rejected the reasoning of *French*.[3] These courts have held that in defining terms in the Guidelines, courts should look to the federal definition of a term, not to the varying definitions found in the laws of fifty states.[4] The Government also pointed out that the Guidelines consistently draw a distinction between imprisonment and parole, in particular when determining criminal history. *See United States v. Stewart*, 49 F.3d at 123 ("[E]ven if *Maryland* law draws no real distinction between a sentence of parole and a sentence of incarceration, the *federal* Guidelines themselves clearly distinguish the two for purposes of calculating criminal history categories under § 4A1.1(e).") (emphasis in original). Although these cases can be distinguished because they do not involve parole but rather involve home detention and probation, it is the reasoning of these decisions that is important, *i.e.*, the focus on the

application of federal law, not state law, to define the term "imprisonment." In addition, at least two district courts have disagreed with the decision in *French*, specifically with respect to defendants then on state parole.[5]

The courts that have rejected *French* have the better of the argument. The Guidelines use the word imprisonment in several sections, and the term appears to consistently mean time spent *in jail*, as opposed to any form of release. While parole is concededly different than probation, supervised release or home detention, it is also clearly different than being *in jail*. The fact is that even though the prison sentence may not be discharged and the defendant can be returned to prison if he violates parole, once he is on parole he is not *in prison*.

■ The purpose of § 5G1.3 is to sentence the defendant as if both the state and federal sentence were imposed at the same time. *See Prewitt*, 83 F.3d at 817 ("Properly applied, § 5G1.3 approximates the total punishment that would have been imposed had all the offenses been federal offenses for which sentences were being

---

not discharged from parole nor his sentence of imprisonment until he completes the entire sentence, a sentence that specifies a period of incarceration. A sentence of probation is a sentence in lieu of incarceration. Supervised release is [a] punishment that is served after the inmate completes his term of incarceration. Home detention is not punishment nor a sentence. The agency that is responsible for incarcerating convicted or jailed persons [has] no authority over a person on home detention.
October 25, 2002 Letter from Sam A. Schmidt, defendant's attorney, at 2.

3.  *See, e.g., United States v. Jones*, 107 F.3d 1147, 1163–65 (6th Cir.1997); *Prewitt v. United States*, 83 F.3d 812, 817 n. 4 (7th Cir. 1996); *United States v. Phipps*, 68 F.3d 159, 161 (7th Cir.1995); *United States v. Stewart*, 49 F.3d 121, 123 n. 3 (4th Cir.1995).

4.  *See Phipps*, 68 F.3d at 161 ("Language in federal statutes and regulations usually has one meaning throughout the country. Even when the statute or rule uses a term such as 'conviction' that refers to state proceedings, the definition of that term is federal ... unless Congress specifies the use of state law—something it does only rarely...."); *Prewitt*, 83 F.3d at 817 (citing *Phipps* for the proposition that the term "imprisonment" is used throughout the Guidelines to denote time in a penal institution); *Stewart*, 49 F.3d at 123 n. 3 ("A federal court construing the federal Sentencing Guidelines need not turn to state law.").

5.  *See United States v. Simmons*, 993 F.Supp. 957, 957–58 (D.S.C.1998), *aff'd*, 165 F.3d 22 (4th Cir.1998); *United States v. Hawkins*, 1996 WL 617430, at *3–4 (E.D.Pa.1996), *aff'd without opinion*, 124 F.3d 189 (3rd Cir.1997).

imposed at the same time."). If that were the case here, defendant's sentence would not have included the possibility of parole as there is no parole in the federal system. Thus, had Rosado been sentenced in federal court on both cases, he would have received a single prison term. The only real overlap is the seven months that he has already served in prison.

■ Although there is no undischarged term of imprisonment that would make § 5G1.3(b) applicable, on November 1, 2002, the Sentencing Commission added an application note to § 5G1.3 which now explicitly permits a downward departure for just this circumstance. This new departure provision reads as follows:

> In the case of a *discharged* term of imprisonment, a downward departure is not prohibited if subsection (b) would have applied to that term of imprisonment had the term been undischarged. Any such departure should be fashioned to achieve a reasonable punishment for the instant offense.

Application Note 7 (emphasis added). Rosado seems particularly well-suited for this departure. As noted earlier, he was sentenced in state court to a sentence of two to four years of imprisonment. If he hadn't successfully completed a shock incarceration program he might very well still be in jail. If that were the case, he would be entitled under § 5G1.3(b) to have all of his state jail time credited while the remainder of his jail time could be served concurrently with his federal sentence. Rosado should not be punished, in effect, for having done so well in jail that he was

given early parole. The seven months that he actually served in jail should be credited by way of this permitted, but discretionary, downward departure. Accordingly, I am downwardly departing to take into account the seven months defendant spent in state custody.

### B. Post–Offense Rehabilitation

■ Notice was given to the parties that I would also consider, sua sponte, a downward departure on the ground of post-offense rehabilitation. It is well-established in this Circuit that the "[p]ower to depart may be based upon significant presentence rehabilitation and the probability of continuing steps toward permanent good behavior." *United States v. Blake,* 89 F.Supp.2d 328, 2000 WL 286685, at *11 (E.D.N.Y. Mar.15, 2000) (Weinstein, J.) (citing *United States v. Core,* 125 F.3d 74, 74–75 (2d Cir.1997); *United States v. Williams,* 65 F.3d 301, 306 (2d Cir.1995)). In addition, "there must be evidence of extraordinary rehabilitation before the sentencing court can downwardly depart on this basis." *United States v. Bryson,* 163 F.3d 742, 747 (2d Cir.1998).

In response to the Court's notice, the Government argued that a recent amendment to the Sentencing Guidelines prohibits a downward departure based on post-sentence rehabilitation, even if exceptional.[6] This amendment does not apply, however, because the basis for the proposed departure is the rehabilitation that Rosado has achieved post-offense, not post-sentencing.[7] The Government also argued that because Rosado received a number of

---

**6.** Amendment 602 added § 5K2.19, effective November 1, 2000.

**7.** It could be argued that by giving defendant a downward departure for the time he spent in state custody, the commencement of the federal sentence should be deemed to coincide with the state sentence. If this were the case, any rehabilitation would necessarily

be post-sentence and not post-offense. While this argument again has some appeal, it cannot foreclose the granting of a post-offense departure where the rehabilitation occurred *prior to* the federal sentencing. Moreover, any contrary interpretation would be bad policy as it would discourage efforts at rehabilitation while in custody, one of the primary goals of incarceration.

benefits in his plea negotiations with the Government, a further departure would upset the balance struck in the plea bargaining process. While the Government's argument is somewhat attractive, it is not totally convincing. There is no doubt that Rosado benefitted enormously from the plea bargaining process. For example, he could have been charged with a much higher drug quantity and he could have been charged as a prior felony offender, both of which would have led to a much higher sentence. But because the Court played no role in the plea bargaining process pursuant to the strictures of Federal Rule of Criminal Procedure 11(e), it cannot be bound by an agreement to which it is not a party.

■■■ In determining whether a post-arrest rehabilitation departure is warranted, a sentencing court " 'must make a refined assessment of the many facts bearing on the outcome, informed by its vantage point and day-to-day experience in criminal sentencing.' " *United States v. Galante,* 111 F.3d 1029, 1033 (2d Cir. 1997) (quoting *Koon v. United States,* 518 U.S. 81, 98, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996)). "Much depends on the baseline from which an individual's extraordinary rehabilitation can be measured. The achievement of the ordinary responsibilities of citizenship, such as regular employment and support of dependants may, depending on the starting point of rehabilitation, be sufficient if that achievement is the product of substantial commitment sustained over time." *Bryson,* 163 F.3d at 748–49.

■■■ As the successful rehabilitation of a criminal "is a valuable achievement of the criminal process," *Core,* 125 F.3d at 78, the question is what purpose will be achieved by further lengthy incarceration. "Since rehabilitation may not be a basis for incarceration but must be considered as a basis for sentencing, Congress must have antici-

pated that sentencing judges would use their authority, in appropriate cases, to reduce a defendant's sentence to permit him to continue his rehabilitation in the most effective manner.' " *United States v. Maier,* 975 F.2d 944, 947 (2d Cir.1992) (quoting 18 U.S.C. § 3561). The Second Circuit has also advised that "district courts should not hesitate to use their discretion in devising sentences that provide individualized justice, provided they give reasons for their departure that allow us to ensure that the departure was permissible under the law." *United States v. Williams,* 65 F.3d 301, 310 (2d Cir.1995).

■■■ While in jail, defendant successfully completed a shock incarceration program and obtained his high school equivalency diploma. He also appears to have given up drugs, found employment, and begun to support his children. He has severed his ties with his drug-dealing friends. After considering all of the circumstances here, including defendant's age, drug and alcohol rehabilitation, successful completion of the state's shock incarceration program, obtaining a GED and certificates of achievement earned while in state custody, gainful employment, an apparent break with his criminal comrades and a renewed commitment to his family, I conclude that defendant should receive a two-level departure for extraordinary post-offense rehabilitation. At offense level 21, Criminal History Category I, his guideline range is 37 to 46 months in custody minus the seven months that he already served in state custody.

**The Sentence**

In light of the above, Rosado is sentenced to 30 months in custody. Following release from imprisonment, defendant shall be on supervised release, in the district of his residence, for a period of four years. In addition, Rosado is required to pay a mandatory assessment of $100, which payment is due immediately. No

fine is imposed because defendant is indigent, has no assets, and no realistic possibility of being able to pay a fine in the near future.

Defendant is to be supervised in the district of his residence and the standard conditions of probation as recommended by the Probation Department shall apply. In addition, the usual mandatory conditions shall apply including: 1) defendant shall not commit another federal, state or local crime; 2) defendant shall not illegally possess a controlled substance; and 3) defendant shall not possess a firearm or other destructive device.

The mandatory drug-testing condition is suspended due to the imposition of a special condition requiring drug treatment. The following special condition is required: (1) defendant shall participate in a substance abuse program approved by the U.S. Probation Department which may include testing to determine whether defendant has reverted to the use of drugs and/or alcohol. Finally, defendant is to report to the nearest Probation Office within 72 hours or release from custody.