**UNITED STATES of America**

v.

**Rodney PRAY, Appellant.**

**No. 01–2473.**

United States Court of Appeals, Third Circuit.

Argued March 29, 2004.

July 2, 2004.

Robert Epstein (Argued), Defender Association of Philadelphia, Federal Court Division, Philadelphia, for Appellant.

Kathy A. Stark (Argued), Office of the United States Attorney, Philadelphia, for Appellee.

Before ALITO, FISHER, and ALDISERT, Circuit Judges.

## OPINION OF THE COURT

ALITO, Circuit Judge.

This is a direct appeal in a criminal case. Rodney Pray ("Pray") pled guilty to conspiring to distribute more than 50 grams of cocaine base, in violation of 21 U.S.C. §§ 846 and 841(a)(1), and was sentenced to 240 months in prison. We vacate the sentence and remand for further proceedings.

## I.

During the summer of 1998, Pray joined a narcotics distribution ring, and on September 24, 1998, he was arrested by Philadelphia police officers. He later pled guilty to state charges of conspiracy and possession with intent to distribute 22 grams of crack cocaine and was sentenced to one to two years of imprisonment on the possession count and a suspended sentence on the conspiracy count. On January 20, 2000, after completing several months of his sentence, the Commonwealth paroled Pray. His parole term expired on December 30, 2000.

On May 31, 2000, while Pray was on parole from his state conviction, a grand jury in the Eastern District of Pennsylvania indicted Pray on one count of conspiring to distribute more than 50 grams of cocaine base, in violation of 21 U.S.C. §§ 846 and 841(a)(1). These charges related to his participation in the drug ring. On January 8, 2001, without entering into an agreement with the government, Pray pled guilty to the charge.

Prior to Pray's sentencing, the Probation Department issued its Pre–Sentence Investigation Report. In response, Pray filed a sentencing memorandum. Part III of the memorandum, labeled "Downward Departure," argued, among other things, that the District Court should "adjust" Pray's sentence under U.S.S.G. § 5G1.3 (2001) and its Application Note 2 to reflect the time that he had already spent in custody on the state charges. App. 105a–106a. Pray argued that he was serving "an undischarged term of imprisonment" on the state charges because a state detainer had been lodged against him for alleged violations of parole. *Id.* at 106a. The government opposed Pray's request, arguing that § 5G1.3 applies only when a

defendant is actually serving a state sentence at the time of sentencing on the federal charges.

In June 2001, the District Court held a sentencing hearing and sentenced Pray to 240 months of imprisonment. In doing so, the Court rejected Pray's request to credit his time served on the state charges against his federal sentence. Pray then took this appeal.[1]

## II.

### A.

■ Pray argues that he was entitled under U.S.S.G. § 5G1.3 (2001) and its Application Note 2 to have the time that he spent in prison on the state charges credited against his federal sentence. We undertake *de novo* review of the District Court's interpretation of the Guidelines. *See United States v. Dorsey*, 166 F.3d 558, 560 (3d Cir.1999).

■ When interpreting a Sentencing Guideline, we begin with the text. *See, e.g., United States v. Milan*, 304 F.3d 273, 293 (3d Cir.2002). At the time of sentencing in this case, U.S.S.G. § 5G1.3(b)(2001) provided as follows:[2]

(b) If subsection (a) does not apply, and the undischarged term of imprisonment resulted from offense(s) that have been fully taken into account in the determination of the offense level for the instant offense, the sentence for the instant offense shall be imposed to run concurrently to the undischarged term of imprisonment.

Application Note 2 provided in pertinent part:

When a sentence is imposed pursuant to subsection (b), the court should adjust the sentence for any period of imprisonment already served as a result of the conduct taken into account in determining the guideline range for the instant offense if the court determines that period of imprisonment will not be credited to the federal sentence by the Bureau of Prisons.

In order for a defendant to qualify for treatment under these provisions, three conditions had to be met. It was necessary (1) that the case did not fall within subsection (a); (2) that the defendant was serving "an undischarged term of imprisonment"; and (3) that "the undischarged term of imprisonment resulted from offense(s) that ha[d] been fully taken into

1. In his brief, Pray first argued that 21 U.S.C. §§ 841(b)(1)(A) and (B) are facially unconstitutional under *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). Pray later conceded that our decision in *United States v. Kelly*, 272 F.3d 622 (3d Cir.2001), forecloses this argument in this circuit.

2. Subsequent to the sentencing in this case, U.S.S.G. § 5G1.3 was amended and currently provides:

(b) If subsection (a) does not apply, and a term of imprisonment resulted from another offense that is relevant conduct to the instant offense of conviction under the provisions of subsections (a)(1), (a)(2), or (a)(3) of § 1B1.3 (Relevant Conduct) and that was the basis for an increase in the offense level

for the instant offense under Chapter Two (Offense Conduct) or Chapter Three (Adjustments), the sentence for the instant offense shall be imposed as follows:

(1) The court shall adjust the sentence for any period of imprisonment already served on the undischarged term of imprisonment if the court determines that such period of imprisonment will not be credited to the federal sentence by the Bureau of Prisons; and

(2) The sentence for the instant offense shall be imposed to run concurrently to the remainder of the undischarged term of imprisonment.

This amendment incorporates into new subsection (b)(1) the substance of prior Application Note 2.

account in the determination of the offense level for the instant offense."

Here, the government does not contend that Pray failed to satisfy the first and third conditions. The government does not dispute the fact that Pray fell outside the scope of subsection (a), which applied "[i]f the instant offense was committed while the defendant was serving a term of imprisonment (including work release, furlough, or escape status) or after sentencing for, but before commencing service of, such term of imprisonment." Nor does the government dispute the fact that Pray's state offenses were "fully taken into account in the determination of the offense level" for the federal charges. Rather, the government rests on the argument that Pray failed to meet the second condition because he was not serving "an undischarged term of imprisonment" at the time of sentencing in federal court.

Pray contends that he was serving "an undischarged term of imprisonment" because he was still "in the legal custody of the state" (Appellant's Br. at 38) due to the lodging of a state parole detainer had been lodged against him. App. 106a. The government has not argued that Pray's status at the time of sentencing on the federal charges was materially different from that of a person who is on parole. Rather, the government takes the view that U.S.S.G. § 5G1.3 does not apply to "a person on parole, such as Pray." Appellee's Br. at 48. We therefore proceed to decide the appeal on the assumption that Pray was "on parole."

### B.

 We hold that the term "imprisonment" in U.S.S.G. § 5G1.3 (2001) and Application Note 2 does not include parole. In ordinary usage, "imprisonment" generally means physical confinement. *See* BLACK'S LAW DICTIONARY 760 (7th ed.1999) (defining "imprisonment" as "[t]he act of confining a person, esp. in a prison.");[3] WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 583 (10th ed.1993)(primary definition of "imprison" is "to put in prison: confine in a jail"). *See also United States v. Schnupp*, Nos. 03–1964/3384 (3d Civ., May 18, 2004), slip op. 9.

A person who is on parole, although subject to some restraints on liberty, is not "imprisoned" in the sense in which the term is usually used. For example, if a parolee were informed at the end of a parole revocation hearing that the outcome was "imprisonment," the parolee would not think that this meant that he was going to be returned to parole.

If the Sentencing Commission had intended for the term "imprisonment" in U.S.S.G. § 5G1.3 to carry an unusually broad meaning that encompasses parole, we believe that the Commission would have said so expressly. In subsection (a), the Commission took pains to specify that it intended the term "imprisonment," as used in that provision, to include "work release, furlough, or escape status." In subsection (b), the Commission could have specified that an "undischarged term of imprisonment" includes parole, supervised release, and probation, but it did not do so.

It is noteworthy that other provisions of the Guidelines use the term "imprisonment" to mean incarceration. For example, U.S.S.G. § 4A1.2(b), which defines the term "sentence of imprisonment" for the purpose of computing criminal history, provides that the term "means a sentence of incarceration" and excludes any portion

---

**3.** *See also* BLACK'S LAW DICTIONARY 764 (7th ed.1999) (defining "incarceration" as "the act or process of confining someone.")

of the sentence that is suspended. Chapter Five of the Guidelines, "Determining the Sentence," treats sentences of imprisonment, probation, and supervised release as different types of sentences, placing each in a separate Part. The Guidelines provide that "a term of supervised release" "shall ... *follow* imprisonment." U.S.S.G. § 5D1.1(emphasis added). U.S.S.G. § 5C1.1(a) refers to the guidelines ranges, which do not include months spent on probation or supervised release, as "guidelines for imprisonment." Based on the ordinary meaning of the term and its specific usage in the Guidelines, we hold that the term "imprisonment" in U.S.S.G. § 5G1.3(b) means actual incarceration, not parole.

Our holding is consistent with the weight of authority. With one exception, every other court that has considered the question has held that parole, supervised release, and probation do not qualify as "imprisonment" under U.S.S.G. § 5G1.3. *See United States v. Tisdale*, 248 F.3d 964, 976 (10th Cir.2001) *cert. denied*, 534 U.S. 1153, 122 S.Ct. 1120, 151 L.Ed.2d 1013 (2002)(probation); *United States v. Cofske*, 157 F.3d 1, 1–2 (1st Cir.1998), *cert. denied*, 526 U.S. 1059, 119 S.Ct. 1374, 143 L.Ed.2d 533 (1999)(probation); *Prewitt v. United States*, 83 F.3d 812, 817–18 (7th Cir.1996)(probation); *United States v. Bernard*, 48 F.3d 427, 431 (9th Cir.1995)(supervised release); *United States v. Rosado*, 254 F.Supp.2d 316, 319 (S.D.N.Y.2003)(parole). *See also United States v. Phipps*, 68 F.3d 159, 161, 163 (7th Cir.1995)(home detention not imprisonment); *United States v. Stewart*, 49 F.3d 121, 123 (4th Cir.1995)(parole not "imprisonment" under other guideline).

Only the Eighth Circuit, in *United States v. French*, 46 F.3d 710, 717 (8th Cir.1995), has held otherwise. Noting that a state statute provided that a parolee was deemed to be "confined, in the legal custody of the department of corrections," the Court held that the state's "retention of custody" over the parolee meant that he was "subject to an 'undischarged term of imprisonment' within the meaning of U.S.S.G. § 5G1.3(b)." *Id.* (citation omitted). We must respectfully disagree with this analysis.

The meaning of the term "imprisonment" in U.S.S.G. § 5G1.3(b) is a question of federal, not state, law. *United States v. Phipps*, 68 F.3d at 161. "[I]n the absence of a plain indication to the contrary, ... it is to be assumed when Congress enacts a statute that it does not intend to make its application dependent on state law. This is because the application of federal legislation is nationwide and at times the federal program would be impaired if state law were to control." *Dickerson v. New Banner Institute, Inc.*, 460 U.S. 103, 119–120, 103 S.Ct. 986, 74 L.Ed.2d 845 (1983) (citations omitted). Here, we see no indication that the Sentencing Commission meant for the meaning of "imprisonment" to depend on a state's treatment of the abstract question whether a term of parole should or should not be deemed to be a form of confinement. We thus hold that Pray is not entitled under U.S.S.G. § 5G1.3(b)(2001) and its Application Note 2 to credit for the time that he spent in state custody.

### III.

Pray next argues that, even if he is not entitled under U.S.S.G. § 5G1.3(b)(2001) and its Application Note 2 to have his period of state incarceration credited against his federal sentence, the District Court was permitted to achieve the same result by granting him a downward departure. The government takes the position that the District Court possessed the authority to grant such a departure (Appellee's Br. at 50 (citing *United States v.*

 

*Brannan,* 74 F.3d 448, 455 (3d Cir.1996))),[4] but the government argues that Pray's sentencing memorandum simply sought credit for the state time under U.S.S.G. § 5G1.3(b)(2001) and its Application Note 2 and did not clearly request the District Court to grant a downward departure shortening his sentence by the same amount. The government also contends that the District Court understood that it had the authority to grant such a departure but declined to do so as a matter of discretion.

■ Although Pray's sentencing memorandum could have been clearer on this point, we believe that it adequately sought a downward departure. As noted, the request to be given credit for the state time appeared under the heading "Downward Departure." Moreover, the District Court's explanation of its reasons for refusing to grant credit for the state time does not make it clear that the Court's decision was discretionary. Therefore, under *United States v. Mummert,* 34 F.3d 201, 205 (3d Cir.1994), we will vacate Pray's sentence and remand for clarification by the District Court.

## IV.

For the reasons set out above, we affirm Pray's conviction, but we vacate his sentence and remand for further proceedings.

4. After Pray's sentencing, a new Application Note was added explicitly recognizing the authority of a District Court to depart on this ground. See U.S.S.G. § 5G1.3 (2003), Application Note 4 (effective Nov. 1, 2002).