

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-14-2006

# USA v. Herrington

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-3158

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"USA v. Herrington" (2006). *2006 Decisions.* Paper 742.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/742

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No: 05-3158

UNITED STATES OF AMERICA

v.

GEORGE HERRINGTON,

Appellant

Appeal from the United States District Court
for the Middle District of Pennsylvania
(Crim. No. 05-cr-00124)
District Judge: Hon. Sylvia H. Rambo

Argued: March 28, 2006

Before: McKEE and VAN ANTWERPEN, Circuit Judges,
and POLLAK, Senior District Judge*

(Opinion filed: July 14, 2006)

JAMES V. WADE, ESQ.
Federal Public Defender
FREDERICK W. ULRICH, ESQ. (Argued)
Assistant Federal Public Defender
100 Chestnut Street, Suite 206
Harrisburg, PA 17101
Attorneys for Appellant

THOMAS A. MARINO, ESQ.
United States Attorney
THEODORE B. SMITH, III, ESQ. (Argued)
Assistant United States Attorney

---

*The Honorable Louis H. Pollak, Senior District Judge of the United States District Court for the Eastern District of Pennsylvania, sitting by designation.

Federal Building
228 Walnut Street
Harrisburg, PA 17108
<u>Attorneys for Appellee</u>

———————

OPINION

———————

McKEE, <u>Circuit Judge</u>.

George Herrington appeals the sentence that was imposed following his guilty plea

to operating a motor vehicle while under suspension for driving under the influence of

alcohol, in violation of Section 1543(b)(1) of the Pennsylvania Vehicle Code, 75 Pa. C. S.

§ 1543(b)(1), as assimilated into federal law by 18 U.S.C. § 13(a).  A magistrate judge

sentenced him to a term of imprisonment for the assimilated violation.[1]  The district court

affirmed that sentence and denied his appeal.  For the reasons that follow, we will affirm

the sentence of imprisonment, but remand to the district court with instructions to remand

to the magistrate judge to consider whether to recommend a community confinement

center as the place of Herrington's imprisonment.

## I.  PROCEDURAL HISTORY

On October 28, 2003, Herrington, while driving at the Letterkenny Army Depot,

was issued a violation notice for driving while under suspension for driving under the

influence of alcohol  in violation of 75 Pa. C. S. § 1543(b)(1), as assimilated into federal

———————

[1]The magistrate judge had jurisdiction pursuant to 28 U.S.C. § 636(a)(4) (providing that each magistrate judge shall have the power to impose a sentence for a petty offense).

law by 18 U.S.C. § 13(a). The DUI and suspension were antecedent to the violation notice at Letterkenny. On February 17, 2004, he pled guilty to the charge before a magistrate judge. At a sentencing hearing on May 19, 2004, Herrington asked that the magistrate judge consider the following dispositions: (1) a sentence of 90 days probation with the condition that he serve the 90 days at a community confinement center ("CCC"); (2) a sentence of 90 days imprisonment with a recommendation that he be permitted to serve the sentence at a CCC with work release; and (3) a sentence of 90 days to be served on consecutive weekends.

The magistrate judge, after considering briefs and hearing argument, imposed what he believed to be a mandatory sentence of imprisonment for 90 days and a mandatory fine of $1,000 pursuant to 75 Pa. C. S. § 1543(b), after finding that he had no authority to impose a sentence of probation with conditions of confinement. The magistrate judge also declined to recommend that Herrington be committed to a CCC with work release.

Herrington appealed to the district court, and on November 16, 2004, the district court vacated the sentence and remanded to the magistrate judge for resentencing in light of a recent amendment to 75 Pa. C. S. § 1543(b) that mandated imposition of a sentence between 60 and 90 days.

Thereafter, Herrington appeared for resentencing. He once again requested that the magistrate judge impose a sentence of probation with conditions of confinement. However, the magistrate judge again refused. The judge believed he had no authority to impose a sentence of probation because he believed that imprisonment was mandatory.

3

In the alternative, Herrington requested that he be sentenced to a CCC with work release as he had at the original sentencing. However, the magistrate judge observed that, pursuant to the Bureau of Prisons (BOP) 2002 Policy, the BOP no longer maintained a work release program based upon advice of the Department of Justice.[1] The magistrate judge, assuming that a recommendation to a CCC with work release was nevertheless permissible despite the 2002 Policy, determined that it would serve no worthwhile purpose to recommend a sentence to a CCC with work release because the BOP would not honor such a recommendation. Alternatively, the magistrate judge framed his decision as one of sentencing discretion, and reasoned that where a work-release program does not exist, there would be no basis for exercising his discretion and making a meaningless recommendation. Therefore, the magistrate judge sentenced Herrington to a term of imprisonment of 60 days and the minimum fine of $500 under the amended statute.

Herrington again appealed to the district court, arguing that the magistrate judge had abused his discretion in holding that he lacked the authority to impose a sentence of probation with conditions of confinement and violated his due process rights by sentencing him based upon a material misunderstanding of the law, viz., the propriety of the BOP's 2002 policy regarding CCCs. Herrington also argued that the BOP's treatment of similarly situated individuals violated the equal protection clause.

---

[1]The 2002 BOP policy is discussed below.

The district court disagreed. The court found that probation with conditions of confinement would not satisfy a sentence of imprisonment for purposes of federal sentencing policy; that the magistrate judge did not rely upon the BOP's 2002 policy in declining to recommend placement in a CCC; and that the BOP's 2002 policy did not result in different treatment of similarly situated individuals.

This appeal followed.[2]

## II. DISCUSSION

### A.

Herrington contends that the magistrate judge and the district court erred in determining that a sentence of probation with conditions of confinement could not be imposed for the assimilated violation.

The assimilated violation, § 1543(b)(1) of the Pennsylvania Vehicle Code provides as follows:

> A person who drives a motor vehicle on a highway or trafficway of this Commonwealth at a time when the person's operating privilege is suspended or revoked [in connection with a driving under the influence offense] *shall be sentenced* to pay a fine of $500 and *to undergo imprisonment* for a period of not less than 60 days nor more than 90 days.

75 Pa. C. S. § 1543(b)(1) (emphasis added). The Assimilated Crimes Act ("ACA"),

---

[2]The magistrate judge granted Herrington voluntary surrender as well as release pending appeal to the district court. During the pendency of this appeal, the magistrate judge has not scheduled a surrender date. Thus, Herrington remains free pending this appeal.

provides, in relevant part, that a person who "commits any act or omission" in a place within the special maritime and territorial jurisdiction of the United States[3] which, "although not made punishable by any enactment of Congress, would be punishable if committed or omitted" under the laws of the state or territory in which such place is located, "shall be guilty of a like offense *and subject to a like punishment*." 18 U.S.C. § 13(a) (emphasis added). Congress enacted the ACA to fill "the voids in the criminal law applicable to federal enclaves created by the failure of Congress to pass specific criminal statutes." *United States v. Englehorn*, 122 F.3d 508, 510 (8th Cir. 1997). Therefore, as the Court of Appeals for the Fourth Circuit has noted:

> [O]ne who commits an act illegal under state law but not prohibited by federal law in an area of federal jurisdiction may be sentenced "only in the way and to the extent" that the person could have been sentenced in state court. *United States v. Press Publishing Corp.*, 219 U.S. 1, 10, 31 S.Ct. 212, 214, 55 L.Ed. 65 (1911); *United States v. Minger*, 976 F.2d 185, 187-188 (4th Cir. 1992). For instance, a term of imprisonment imposed for an assimilated crime may not exceed the maximum term established by state law. *United States v. Young*, 916 F.2d 147, 150 (4th Cir. 1990).
>
> This does not mean, however, that the federal courts are completely bound by state sentencing requirements. As noted by this court, "[t]he phrase 'like punishment' . . . does not encompass every incident of a state's sentencing policy." [*United States v.*] *Harris*, 27 F.3d [111,] 115 [4th Cir. 1994]. Rather, the term "like punishment," as used in the ACA, requires only that the punishment be similar, not identical. *See United States v. Kelly*, 989 F.2d 162, 164 (4th Cir.), *cert.*

---

[3]Letterkenny Army Depot is a place within the special maritime or territorial jurisdiction of the United States pursuant to 18 U.S.C. § 7(c).

6

*denied*, 510 U.S. 845, 114 S.Ct. 158, 126 L.Ed.2d 119 (1993).

. . .

\*\*\*\*\*\*\*

> Most importantly, while a federal court acting pursuant to the ACA is restricted by state law, it will not assimilate a state sentencing provision that conflicts with federal sentencing policy. *See Kelly*, 989 F.2d at 164. "[A] federal prisoner, though convicted and sentenced in accordance with § 13, should be subject to federal correctional policies." *Harris*, 27 F.3d at 115. . . . Accordingly, when state law provisions conflict with federal policy, federal policy controls. *See Kelly*, 989 F.2d at 164.

*United States v. Pierce*, 75 F.3d 173, 176-77 (4th Cir. 1996); *see also United States v. Davis*, 845 F.2d 94, 99 (5th Cir. 1988) ("We note that federal courts have consistently declined to assimilate provisions of state law through the ACA if the state law provision would conflict with federal policy.") (citations omitted).

Herrington begins his argument by asserting that under Pennsylvania law, a sentence of probation with conditions of confinement is construed as "imprisonment." Herrington's Br. at 13-14 (citing authority). Therefore, he argues that because the ACA provides that he should be "subject to a like punishment," the magistrate judge had the authority to sentence him to a term of probation with conditions of confinement rather than sentencing him to a term of imprisonment. We disagree.

We believe that federal sentencing policy precludes the imposition of a sentence of probation with conditions of confinement for the conviction of the assimilated crime. At the outset, we note that Chapter 227 of the Federal Criminal Code, entitled "Sentences,"

7

is divided into four subchapters, lettered "A," "B," "C," and "D," respectively entitled "General Provisions," "Probation," "Fines," and "Imprisonment." 18 U.S.C. § 3551-3585. Thus, the structure of the applicable portion of the Code clearly distinguishes between a sentence of probation and a sentence of imprisonment.

Furthermore, § 3561(a) provides that a

> defendant who has been found guilty of an offense may be sentenced to a term of probation unless . . . (2) the offense is an offense for which probation has been expressly precluded; or (3) the defendant is sentenced at the same time to a sentence of imprisonment for the same or a different offense that is not a petty offense.

18 U.S.C. § 3561(a). Therefore, the provision of the Code that authorizes a term of probation for certain offenses distinguishes between a sentence of probation and a sentence of imprisonment and prohibits the imposition of probation where it is expressly precluded or in combination with a sentence of imprisonment.

Where probation is a permissible sentence, a court may impose the discretionary condition that the defendant "reside at, or participate in the program of, a community correction facility (including a facility maintained or under contract to the Bureau of Prisons) for all or part of the term of probation." 18 U.S.C. § 3563(b)(11). Thus, even if the court imposes such a discretionary condition, the sentence is still a sentence of probation, not a sentence of imprisonment. Moreover, 18 U.S.C. § 3582(c)(1) provides that a term of imprisonment can be modified to a term of probation only for extraordinary and compelling reasons.

8

Furthermore, we have had recent occasion to observe that almost all the courts that considered the issue under the Sentencing Guidelines concluded that a non-incarceratory sentence, such as probation, would not satisfy the requirement of a sentence of imprisonment. In *United States v. Pray*, 373 F.3d 348 (3d Cir. 2004) (holding that defendant was not entitled to credit for time spent on state parole because parole does not qualify as imprisonment under U.S.S.G. § 5G1.3(b)), we noted:

> With one exception, every other court that has considered the question has held that parole, supervised release and probation do not qualify as "imprisonment" under U.S.S.G. § 5G1.3. *See United States v. Tisdale*, 248 F.3d 964, 976 (10th Cir. 2001), *cert. denied*, 534 U.S. 1153 (2002) (probation); *United States v. Cofske*, 157 F.3d 1, 1-2 (1st Cir. 1998), *cert. denied*, 526 U.S. 1059 (1999) (probation); *Prewitt v. United States*, 83 F.3d 812, 817-18 (7th Cir. 1996) (probation); *United States v. Bernard*, 48 F.3d 427, 431 (9th Cir. 1995) (supervised release); *United States v. Rosato*, 254 F. Supp.2d 316, 319 (S.D.N.Y. 2003) (parole); *United States v. Phipps*, 68 F.3d 159, 163 (7th Cir. 1995) (home detention not imprisonment); *United States v. Stewart*, 49 F.3d 121, 123 (4th Cir. 1995) (parole not "imprisonment" under other guideline).
>
> [*But see*] *United States v. French*, 46 F.3d 710, 717 (8th Cir. 1995) [(holding otherwise)].

373 F.3d at 362.

We realize that the assimilated crime at issue here is a Class B misdemeanor under federal law and, therefore, is not subject to the Sentencing Guidelines. We also note that *Pray* dealt with parole rather than probation and did so within the context of the Guidelines. Nevertheless, we do not believe these distinctions prevent us from

9

concluding that under federal sentencing policy a sentence of probation with conditions of confinement does not qualify as imprisonment.

Accordingly, for all of the above reasons, we hold that a sentence of probation, even with conditions of confinement, would not satisfy the ACA's requirement of "like punishment" for the assimilated crime.

**B.**

Herrington makes two other arguments in his brief. First, he contends that the magistrate judge sentenced him based upon a material understanding of the law, specifically, the applicability of the 2002 BOP Policy regarding a recommendation by a sentencing judge to place a defendant in a CCC. Second, he makes an equal protection argument regarding the BOP's treatment of individuals otherwise eligible for CCC placement. However, our decision in *Woodall v. Federal Bureau of Prisons*, 432 F.3d 235 (3d Cir. 2005), filed after Herrington's sentencing, makes it unnecessary for us to consider Herrington's remaining arguments.

The BOP has the authority under 18 U.S.C. § 3621(b) to determine the location of an inmate's imprisonment. The statute not only grants the BOP placement authority, it also lists factors for consideration in making placement and transfer determinations:

> (b) Place of imprisonment. The Bureau of Prisons shall designate the place of the prisoner's imprisonment. The Bureau *may* designate any available penal or correctional facility that meets minimum standards of health and habitability established by the Bureau, whether maintained by the Federal Government or otherwise and whether within or without the judicial district in which the person was

10

convicted, that the Bureau determines to be appropriate and suitable, considering –
(1) the resources of the facility contemplated;
(2) the nature and circumstances of the offense;
(3) the history and characteristics of the prisoner;
(4) *any statement by the court that imposed the sentence –*
    (A) *concerning the purposes for which the sentence to imprisonment was determined to be warranted; or*
    (B) *recommending a type of penal or correctional facility as appropriate*; and
(5) any pertinent policy statement issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28.

In designating the place of imprisonment or making transfers under this subsection, there shall be no favoritism given to prisoners of high social or economic status. *The Bureau may at any time, having regard for the same matters, direct the transfer of a prisoner from one penal or correctional facility to another.*

18 U.S.C. § 3621 (emphasis added). However, the grant of authority in § 3621(b) must be read in conjunction with § 3624(c), which obligates the BOP to prepare prisoners for community re-entry by, *inter alia*, placing them in community confinement:

(c) Pre-release custody. The Bureau of Prisons shall, to the extent practicable, assure that a prisoner serving a term of imprisonment spends a reasonable part, not to exceed six months, or the last 10 per centum of the term to be served under conditions that will afford the prisoner a reasonable opportunity to adjust to and prepare for the prisoner's re-entry into the community. The authority provided by this subsection may be used to place a prisoner in home confinement.

18 U.S.C. § 3624(c).

As we noted in *Woodall*, "[p]rior to December 2002, the BOP regularly considered

11

prisoners for CCC placement for up to six months at the end of a sentence, regardless of the total sentence length." 432 F.3d at 240. In addition, "the BOP had a policy of placing in CCCs some low-risk, non-violent federal offenders who had been sentenced to short periods of imprisonment, including for periods of more than six months, particularly if the sentencing court so recommend." *Goldings v. Winn*, 383 F.3d 17, 19 (1st Cir. 2004). However, in December 2002, the Department of Justice Office of Legal Counsel ("OLC") "issued a memorandum concluding that the BOP's practice of placing some prisoners in CCCs for all or significant parts of their sentences was contrary to the BOP's statutory grant of authority." *Woodall*, 432 F.3d at 240. In the 2002 memo, the OLC took the view that the BOP did not have general authority under § 3621 to place prisoners in a CCC from the outset of their sentence or at any time the BOP chooses. *Id.* Rather, the OLC believed that authority to transfer a prisoner to a CCC was limited by § 3624, and, therefore, a prisoner's time in a CCC was limited to the lesser of 10 percent of the total sentence or six months. *Id.* On December 20, 2002, the BOP followed the OLC's advice and informed the federal judiciary that it would no longer honor recommendations for direct placement into CCCs. App. 75.

However, sister courts of appeals invalidated these regulations, finding that they improperly cabined the BOP's discretion under § 3621. *Elwood v. Jeter*, 386 F.3d 842 (8th Cir. 2004); *Goldings v. Winn*, 383 F.3d 17 (1st Cir. 20004). Thereafter, on August 18, 2004, "the BOP proposed new regulations 'announcing its categorical exercise of discretion for designating inmates to community confinement when serving terms of

12

imprisonment." *Woodall*, 432 F.3d at 240 (quoting 69 Fed. Reg. 51,213 (Aug. 18, 2004)). "While acknowledging the BOP's general discretion to place an inmate at a CCC at any time, the 2005 regulations limit CCC placement to the lesser of 10 percent of a prisoner's total sentence or six months, unless special statutory circumstances apply." *Id.* (citing 69 Fed. Reg. 51,213 (August 18, 2004)). The final rules were published on January 10, 2005 and became effective on February 14, 2005. *See* 28 C.F.R. §§ 570.20, 570.21.

In *Woodall*, we addressed, *inter alia*, the validity of the BOP's 2005 regulations governing a sentencing court's placement recommendation concerning a federal prisoner. Woodall had been convicted of two federal crimes. 432 F.3d at 238. He was first convicted of alien smuggling and sentenced to 37 months imprisonment followed by three years of supervised release on December 15, 2000. *Id.* Thereafter, on September 30, 2002, he pled guilty to an escape charge and was sentenced to another six months imprisonment to be followed by three years of supervised release. *Id.* He was released on March 26, 2004, to serve the three year term of supervised release. *Id.*

On April 7, 2004, Woodall was arrested on a state charge of narcotics possession. *Id.* As a result of that arrest, the district court revoked his supervised release for alien smuggling and sentenced him to eighteen months imprisonment with no supervised release. *Id.* The next day, his supervised release was revoked for his escape conviction and he was sentenced to twelve additional months in prison. *Id.*

Thereafter, on February 3, 2005, the sentencing judge amended the sentencing

13

judgment and recommended to the BOP that Woodall spend the last six months of his sentence in a halfway house.[4]  *Id*.  The recommendation was seconded by the Assistant U.S. Attorney. *Id*.  However, personnel at the federal prison told Woodall that because of the 2005 BOP policy, he could not be placed in a CCC for more than 10 percent of his total sentence.  *Id*.  Therefore, he would be entitled to no more than eleven weeks of CCC placement.  *Id*.

Woodall then filed a habeas petition pursuant to 28 U.S.C. § 2241[5] "arguing that the new BOP regulations ignored the placement recommendations of his sentencing judge." *Id*. at 238-39.   However, the district court dismissed the petition after finding that the 2005 regulations were a "permissive construction of the relevant statutes." *Id*. at 239.

On appeal, we reversed.   After discussing the plain meaning of § 3621(b), its legislative history and relevant case law, we found that the regulations were unlawful because they

> do not allow the BOP to consider the nature and circumstances of an inmate's offense, his or her history and pertinent characteristics, or *most importantly, any statement by the sentencing court concerning a placement*

---

[4]Apparently, the BOP considers halfway houses and CCCs as indistinguishable. *Woodall*, 432 F.3d at 240 n.4

[5]We also held in *Woodall* that a habeas petition was the appropriate way to challenge the 2005 BOP regulations because what was at issue was the "execution" of his sentence and not the "'conditions' of his confinement or a routine prison transfer."  432 F.3d at 241-244.

> *recommendation* and the purposes for the sentence. And yet, according to the text and history of § 3621, these factors must be taken into account. The regulations are invalid because the BOP may not categorically remove its ability to consider the explicit factors set forth by Congress in § 3621 (b) for making placement and transfer determinations.

*Id*. at 244 (footnote omitted) (emphasis added). Therefore, we held that "the BOP may transfer an inmate to a CCC or like facility prior to the last six months or ten percent of his sentence." *Id.* at 251. We reminded the BOP that "[i]n exercising its discretion . . ., the BOP must consider the factors set forth in § 3621(b). *Id.* However, we noted "that the BOP may assign a prisoner to a CCC does not mean that it must." *Id.* Rather, the BOP is required "to consider – in good faith" whether or not to transfer an inmate to a CCC. *Id.*

> In making this decision, the BOP should consider the sentencing judge's recommendation and the other § 3621 factors, as well as any other appropriate factors the BOP routinely considers. This should be done without reference to the BOP's 2002 and 2005 policies.

*Id.*

After *Woodall*, it is clear that the BOP cannot rely on its 2002 policy and its 2005 regulations to limit CCC placement to the lesser of 10 percent of a prisoner's total sentence or six months. It is also clear that in exercising its discretion regarding CCC placement, the BOP should consider the sentencing judge's recommendation regarding CCC placement, together with the other § 3621(b) factors. However, because the magistrate judge, for the reasons explained above, did not recommend CCC placement for

15

Herrington, we believe that the most appropriate thing to do is remand to the district court so the district court can remand to the magistrate judge to decide whether to recommend such placement.

### III.

For all of the above reasons, we will affirm the district court's denial of Herrington's appeal from the sentence of imprisonment imposed by the magistrate judge, but remand for the magistrate judge to consider whether to recommend CCC placement for Herrington.

_____