

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

1-24-2008

# USA v. McDonald

Precedential or Non-Precedential: Non-Precedential

Docket No. 06-1241

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"USA v. McDonald" (2008). *2008 Decisions*. Paper 1716.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/1716

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

Nos. 06-1241 / 06-1476

UNITED STATES OF AMERICA

v.

YUSEF MCDONALD,
Appellant in 06-1241

UNITED STATES OF AMERICA

v.

DEON LISTER,
Appellant in 06-1476

Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Criminal Action No. 04-cr-00407/-2)
District Judge: Honorable William W. Caldwell

Submitted Under Third Circuit LAR 34.1(a)
November 6, 2007

Before: SCIRICA, Chief Judge, AMBRO, and JORDAN, Circuit Judges

(filed: January 24, 2008 )

OPINION

AMBRO, Circuit Judge

Yusef McDonald, Deon Lister, and a third co-defendant were indicted in the Middle District of Pennsylvania for distribution and possession with the intent to distribute 50 grams or more of crack cocaine. McDonald pled guilty to two counts of the use of a communications facility to facilitate a drug transaction. Lister pled guilty to the unlawful distribution and possession with the intent to distribute cocaine hydrochloride and crack cocaine from April 2003 through November 2004. All other charges were dismissed. McDonald and Lister now appeal the sentences imposed by the District Court.[1] While we affirm the sentence imposed on Lister, we remand for further proceedings as to the sentence imposed on McDonald.

## I.    Appeal of Yusuf McDonald

At the time of sentencing, McDonald had served approximately two years of aggregate five to ten-year sentences imposed by the Northampton County, Pennsylvania, Court of Common Pleas. He appeals the failure of the District Court to credit him for time already served on that state sentence. Our review of this issue is plenary. *United States v. Sabarese*, 71 F.3d 94, 95 (3d Cir. 1999).

U.S.S.G. 5G1.3(b) provides that a defendant's sentence shall be adjusted if a term of imprisonment resulted "from another offense that is relevant conduct to the instant

_____

[1]We have jurisdiction under 28 U.S.C. § 1291.

2

offense of conviction . . . and that was the basis for an increase in the offense level."  It directs the court to adjust "the sentence for any period of imprisonment already served on the undischarged term of imprisonment if the court determines that such period of imprisonment will not be credited to the federal sentence by the Bureau of Prisons," and states that the sentence "shall be imposed to run concurrently to the remainder of the undischarged term of imprisonment."  *Id.*

The Government conceded at the sentencing hearing that McDonald's offenses under state law were part of a "multi-county drug distribution operation, and that would be relevant conduct."  App. 34.  It argued, however, that because his Sentencing Guidelines range (262-327 months) was so far above the 96-month statutory maximum, McDonald should not be given credit for the approximately two years he served on the state sentences.

The District Court imposed the maximum 96-month term of imprisonment on McDonald.  It recommended to the Bureau of Prisons that the state facility be designated the place of confinement, "thereby making these sentences concurrent with the defendant's [remaining] sentences [from the state case]."  App. 37.  Rejecting the recommendation to the contrary in McDonald's Pre-Sentence Investigation Report ("PSR"),[2] the District Court did not give McDonald credit for time already served on the

_____

[2]McDonald's PSR indicates that the conduct underlying the state sentence was "fully taken into account in the determination of the offense level for the instant offense."  The PSR did not assign points in the calculation of McDonald's criminal history because this

3

state sentence. It also did not expressly consider the factors outlined in 18 U.S.C. § 3553(a) or express any intention to depart from the Sentencing Guidelines. Instead, the Court appears to have based its decision not to give McDonald credit due to the general consideration that McDonald already had received "a great break in the way he was charged" and was not "entitled to anything." *Id*.

The first question on McDonald's appeal is whether, as he contends, the conduct underlying the state sentence is relevant conduct within the meaning of U.S.S.G. 5G1.3(b). As noted, the Government appeared to concede at the sentencing hearing that it was relevant conduct. On appeal, the Government argues, seemingly half-heartedly, the opposite. Complicating matters further, it is not clear what the District Court decided on this point, particularly because, despite the Government's concession to the contrary, the Court apparently understood the Government to argue that the sales underlying the state and federal charges were "not really connected." App. 36.

We are persuaded by the apparent concession of the Government and the conclusion of the PSR that the conduct underlying the state sentence is relevant to the conduct at issue in this case. However, in the absence of a finding by the District Court on this point, we hesitate to rule on that issue before the Court has addressed it. Accordingly, that question is appropriate for consideration on remand.

Notwithstanding this open question, we may affirm if we conclude that, assuming

---

"is considered conduct that is part of the instant offense."

4

the conduct underlying the state sentence is relevant conduct, it did not raise the offense level within the meaning of U.S.S.G. 5G1.3(b). The specific question in this case is whether relevant conduct can be the basis for an increase in the Guidelines offense level when that offense level already has surpassed a statutory maximum. The Government's description of the facts of this case exemplifies that question: McDonald, they assert, distributed a large amount of drugs. This gave him an offense level (34) and a resulting Guidelines sentencing range (262-327 months) well beyond the statutory maximum for the crime with which he was charged (96 months). That distribution of a large amount of drugs included a small subset of those drugs that did not affect his offense level. That subset of drugs purportedly formed the basis of a conviction and sentence in state court. Even taking away that smaller amount, the Government argues, the remaining amount of drugs would still put McDonald well beyond the statutory maximum; moreover, McDonald would receive the statutory maximum even if the smaller amount of drugs were not counted in calculating the federal sentence. Should we follow this analysis, the District Court did not err when it failed to give McDonald credit for the time served in state prison for the smaller amount of drugs.[3]

The Government may be correct to assert that a criminal defendant should not have his sentence reduced simply because the PSR considers relevant conduct that, because of

----

[3]The Government does not address the apparent inconsistency in the District Court's approach when it ruled that the sentences should run concurrently but that McDonald nonetheless should not receive credit for time served.

the operation of a statutory maximum, did not increase the actual sentence imposed.

However, we cannot evaluate the accuracy of the Government's assertions regarding the relative significance of the asserted large and small drug-sale conspiracies.[4] The PSR does not indicate the exact amounts involved in each conspiracy and the current record does not tell us whether McDonald would have received a 96-month sentence even if the District Court had not considered the conduct underlying the state sentence. For these reasons, while any error by the District Court may be harmless, at this time we cannot conclude that it was.

Accordingly, we vacate McDonald's sentence and remand for clarification.[5]

---

[4]The Government's analysis of the likely amount of drugs involved in the sales in various counties probably is correct. Yet, as it acknowledges, the PSR fails to clarify the amounts at issue, leaving us to speculate.

[5]*See United States v. Pray*, 373 F.3d 358, 363 (3d Cir. 2004) (vacating and remanding for clarification after challenge to application of U.S.S.G. § 5G1.3(b)). *See also United States v. Grier*, 475 F.3d 556, 572 (3d Cir. 2007) (en banc) ("The nature of the final sentence is, as always, a matter within the discretion of the District Court. We do ask, however, that the District Court explain its decision on the record . . . .").

We recognize, particularly in light of the Supreme Court's recent emphasis on the importance of District Court discretion under 18 U.S.C. § 3553(a), *Gall v. United States*, 128 S.Ct. 586, 596-97 (2007), that the District Court may have intended to exercise such discretion in imposing sentence on McDonald. At one point the Court stated, "I really don't think he's entitled to anything. I think he's gotten a great break in the way he was charged." App. 37. Nevertheless, and while we continue to eschew any requirement that district judges follow a script in sentencing, the record is not sufficiently clear for us to know whether the Court here was exercising its discretion to impose a sentence outside the Guidelines. On remand, therefore, the Court should also make clear its intent in that regard. *Cf. Gall*, 128 S.Ct. at 596-97 ("[A] district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range. . . . [T]he district judge should then consider all of the § 3553(a) factors to determine whether they support the sentence requested by a party[, and then] . . . make an individualized assessment based

## II.    Appeal of Deon Lister

The PSR prepared prior to Lister's sentencing determined that he had a criminal history category of VI with a base offense level of 36.  It calculated an adjusted offense level of 40, reflecting Lister's possession of a dangerous weapon and his role in the offense.  The resulting Guidelines imprisonment range was 360 months to life.  Pursuant to the plea agreement, the Guidelines sentence was capped at 240 months.  Lister did not object at the sentencing hearing to the contents of his PSR.

Prior to actual sentencing the Government moved for a downward departure to reflect Lister's substantial assistance to it.  It recommended a sentence of 180 months' imprisonment.  Lister spoke at the sentencing hearing, as did the founder and president of the National Incarcerated Parents and Family Network.  Having considered this testimony in support of Lister and other relevant factors (such as Lister's criminal history), the District Court sentenced him to 156 months' imprisonment.

Lister argues that the Court erred by failing to inquire into his knowledge of the contents of the PSR or of his counsel's review of that document.  He also argues that the sentence imposed is unreasonable and that his counsel failed to provide competent representation.

### A.    Failure to Inquire into Knowledge of the Contents of the PSR

Fed. R. Crim. P. 32(i)(1) requires that the sentencing court "verify that the

---

on the facts presented.").

7

defendant and the defendant's attorney have read and discussed the presentence report and any addendum to the report." At sentencing, counsel for Lister stated: "We filed no objections to the pre-sentence investigation basically because there was [sic] essentially no objections to be made." Lister took issue with "a tone that relied upon the accuracy and truthfulness of [Lister's] co-defendants," but did not discuss any of the conclusions of the PSR with which he now disagrees. The Government concedes that the District Court erred in failing to inquire into whether Lister and his counsel had read and discussed the PSR. It argues, however, that Lister was not prejudiced by this error.

Because Lister did not object to this oversight, it is subject to plain-error review. *United States v. Stevens*, 223 F.3d 239, 242 (3d Cir. 2000). Under that standard, we review for error that was plain and that affected substantial rights. *Id.* If so, we determine if the error "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." *United States v. Olano*, 507 U.S. 725, 736 (1993).

Nothing in the record suggests that any error committed by the District Court affected Lister's substantial rights. He fails to assert that he did not review the PSR before the sentencing hearing. Nor does he suggest that he did not discuss the PSR with his counsel. In this light, Lister's suggestions of prejudice are unpersuasive.[6] He argues, for example, that but for the failure to inquire into his review of the PSR, he "would have

---

[6]Lister's counsel fails to analyze this case under the plain error standard or to cite *Stevens*. Notwithstanding this omission, counsel for Lister does identify supposed disadvantages suffered by Lister as a result of the District Court's error.

had the opportunity to challenge the conclusions and averments in the PSR with which he did not agree." Yet Lister did have such an opportunity but stated that "there was [sic] essentially no objections to be made" to the PSR. Similarly unpersuasive is Lister's argument that he would have addressed "the portions of the report he obviously disagreed with" had the District Court stated whether it adopted the facts described in the PSR. This leaves Lister's substantial rights unaffected by the Court's error. We thus reject this aspect of his appeal.

B.      Reasonableness of the Sentence

Lister contends that his sentence is unreasonable because the District Court relied on the PSR. As noted, Lister did not object to the PSR at the sentencing hearing. Moreover, the Guidelines range (360 months to life) was well over the statutory maximum (240 months) for the crime to which Lister pled guilty, which was much higher than the sentence recommended by the Government (180 months), which in turn was higher than the sentence imposed (156 months). Lister concedes that, even absent the errors he alleges in the PSR, the Guidelines range would be higher than the statutory maximum. Indeed, there is no plausible argument that the sentence imposed on Lister was unreasonable. His argument that he should have received a sentence comparable to the shorter sentences of his two co-defendants ultimately is a contention that, in exercising its discretion, the District Court should have departed downward an even greater extent from the statutory maximum. We will not entertain such a challenge. *See*

9

*United States v. Cooper*, 437 F.3d 324, 332-33 (3d Cir. 2006).

C.      Ineffective Assistance of Counsel

Lister alleges ineffective assistance of counsel at the sentencing hearing.  We have explained that such arguments are raised best in the first instance in the District Court pursuant to 28 U.S.C. § 2255.  *See United States v. Headly*, 923 F.2d 1079, 1083 (3d Cir. 1991).  No reason exists for us even to consider doing otherwise.[7]

\* \* \* \* \*

Because each of Lister's arguments is unpersuasive, we affirm his sentence.

---

[7]Nor does the Government ask us to reach the merits of this question.