NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 22-1542
_____

UNITED STATES OF AMERICA EX REL., ERIC JOHNSON,
Appellant

v.

AMERIHEALTH INSURANCE COMPANY OF NEW JERSEY;
AMERIHEALTH HMO, INC; INDEPENDENCE HOLDINGS INC.
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil No. 1-17-cv-11646)
District Judge: Honorable Mitchell S. Goldberg
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1
on February 7, 2023

Before: CHAGARES, *Chief Judge*, SCIRICA, and RENDELL, *Circuit Judges.*

(Filed: May 3, 2023)

_____

OPINION[*]
_____

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

**SCIRICA**, *Circuit Judge*

This is an appeal of an order dismissing Relator Eric Johnson's claims under the False Claims Act (FCA). Relator alleges that Appellee health insurers[1] defrauded the federal government by falsely certifying compliance with a New Jersey state regulation limiting copays in order to receive government payments for their health insurance plans listed on New Jersey's federally operated insurance exchange. The District Court dismissed Relator's claim, holding that Relator could not plead falsity because Appellees were not required to certify their compliance with the state regulation in order to receive federal payments. The court also found that any false certification would not have been material to the government's payment decision. We agree on both counts and will affirm the District Court's dismissal.

I.[2]

Defendants sell health insurance through New Jersey's insurance exchange—an online marketplace where people and small businesses can buy insurance plans. *See Maine Cmty. Health Options v. United States*, 140 S. Ct. 1308, 1315 (2020). The Affordable Care Act (ACA) "requires the creation" of such an exchange "in each [s]tate." *King v. Burwell*, 576 U.S. 473, 482–83 (2015). A state may choose to establish and operate its own exchange. 42 U.S.C. § 18031(b)(1). Or, if a state chooses not to establish its own exchange, the ACA provides that the federal government "shall . . . establish and operate such

---

[1] AmeriHealth Insurance Company of New Jersey; AmeriHealth HMO, Inc., and Independence Holdings, Inc.

[2] We write only for the parties and therefore assume familiarity with the underlying facts and law.

2

[e]xchange within the [s]tate." 42 U.S.C. § 18041(c)(1). New Jersey's exchange is operated by the federal government.

The ACA requires that insurance plans include "essential health benefits" as defined by the ACA's text and the Secretary of Health and Human Services. 42 U.S.C. § 18022; 45 C.F.R. § 156.110(a). Plans certified to provide these benefits are called Qualified Health Plans (QHPs). Health insurers, such as Appellees, who offer QHPs "must comply with the ACA's various insurance coverage requirements." *United States ex rel. Eric Johnson v. AmeriHealth Ins. Co. of N.J.*, No. 17-11646, 2022 WL 621032, at *1 (D.N.J. Mar. 3, 2022).

Among the federal regulations detailing those requirements is 45 C.F.R. § 156.200(d), which is at the core of Relator's complaint:

> *State requirements. A QHP issuer certified by an Exchange must adhere to the requirements of this subpart and any provisions imposed by the Exchange, or a state in connection with its Exchange, that are conditions of its participation or certification with respect to each of its QHPs.*

Relator understands this regulation to require QHP issuers to comply with state regulations regardless of whether the state or the federal government operates the exchange.

Relator alleges Appellees did not comply with a New Jersey regulation requiring health insurance issuers to certify that copayments for rehabilitative services do not exceed half of the service's total cost. N.J.A.C. § 11:22-5.5(a)(11) Relator claims Appellees knowingly submitted false calculations to hide the fact they charged policyholders copays above the statutory maximum set out in § 11:22-5.5(a)(11). *See AmeriHealth*, 2022 WL 521032, at *2–3. Relator also claims Appellees explicitly attested to compliance with New Jersey regulations regarding state mandated benefits, including  § 11:22-5.5(a)(11), when

3

they successfully applied to have plans listed on New Jersey's exchange in 2014.

Based on these facts, Relator filed a complaint in 2017 alleging violations of the FCA. After an investigation, the United States declined to intervene but "permitt[ed] Relator to maintain the action in the name of the United States." *AmeriHealth*, 2022 WL 621032, at *3. Relator then filed an amended complaint, which Defendants promptly moved to dismiss for failure to state a claim. *Id.* The District Court granted Defendants' motion, *Id.* at *9, holding that Relator failed to plead falsity because the federal regulation at issue—45 C.F.R. § 156.200(d)—does not require compliance with New Jersey's state law copay limitations. *Id.* at *5–7. The court reasoned that the regulation only requires compliance with requirements imposed by a state "in connection with its Exchange." *Id.* at *6 (quoting 45 C.F.R. § 156.200(d)). Since New Jersey has a federally operated exchange, it does not have its own (*i.e.,* state-operated) exchange, and so does not impose any requirements "in connection with its Exchange" under § 156.200(d). *Id.* The court noted that dismissal would be proper even if Relator successfully pled falsity because Relator also failed to show that the alleged fraud was "material to the government's payment decision." *Id.* at *9 n.7. This appeal followed.

II. [3]

To sustain his False Claims Act case, Relator must plausibly allege that AmeriHealth has "knowingly present[ed]" a "false or fraudulent claim for payment" to the

---

[3] We review the District Court's grant of a motion to dismiss de novo and according to the same standard it applied—whether the complaint contains "sufficient factual allegations, taken as true, to state a claim for relief that is plausible on its face." *Newark Cab Ass'n v. City of Newark*, 901 F.3d 146, 151 (3d Cir. 2018) (cleaned up).

4

government, or a false statement material to that claim. 31 U.S.C. §§ 3729(a)(1)(A)-(B). Relator alleges that AmeriHealth made material false statements about its compliance with state mandated benefits in violation of federal regulations. *See United States ex rel. Greenfield v. Medco Health Solutions, Inc.*, 880 F.3d 89, 94 (3d Cir. 2018) (defining a claimant's "lie[] about its compliance with a statutory, regulatory, or contractual requirement" as a "legally false" claim). The validity of Relator's foundational premise— that § 156.200(d), or perhaps some other provision of the ACA, requires QHP issuers operating through federal exchanges to comply with state insurance regulations—controls the outcome of this case. We conclude, as did the District Court, that the ACA has no such requirement. Accordingly, Relator cannot show that AmeriHealth falsely certified compliance with the regulations in question.

To reiterate, Relator accuses AmeriHealth of violating the following regulation:

*State requirements. A QHP issuer certified by an Exchange must adhere to the requirements of this subpart and any provisions imposed by the Exchange, or a state in connection with its Exchange, that are conditions of its participation or certification with respect to each of its QHPs.*

45 C.F.R. § 156.200(d).

We begin with the text. *United States v. Ashurov*, 726 F.3d 395, 398 (3d Cir. 2013). We consider "the language itself, the specific context in which that language is used, and the broader context of the [regulation] as a whole." *Rosenberg v. XM Ventures*, 274 F.3d 137, 141 (3d Cir. 2001); *see King*, 576 U.S. at 475 (using this approach to interpret provisions of the ACA).

Relator tells us "its Exchange" must refer to the exchange in a state, however

5

established and operated, because "its" refers to ownership or possession. But New Jersey does not own or possess the federal exchange that operates in New Jersey—the federal government does. *See* 42 U.S.C. § 18041(c)(1). Nevertheless, we accept that "its Exchange" could be read to encompass New Jersey's federally operated exchange. It is, after all, the exchange that people in New Jersey use.

But "when read in context, 'with a view to [its] place in the overall statutory scheme,'" the meaning of the phrase becomes unambiguous. *King*, 576 U.S. at 487 (quoting *Food & Drug Admin. V. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 133 (2000)). Other provisions of the ACA draw a sharp distinction between state and federal exchanges. *Compare, e.g.*, 42 U.S.C. § 18031(b) (state authority to create exchange) *and* 42 U.S.C. § 18031(a) (funding for state exchanges), *with* 42 U.S.C. § 18041(c) (federal authority to create exchange) *and* 42 U.S.C. § 18121 (funding for federal exchanges). Similarly, another part of the ACA gives states that elect to establish their own exchanges the choice between adopting federal standards or "a State law or regulation that the Secretary determines implements the standards within the State." 42 U.S.C. § 18041(b). These provisions all indicate that, contrary to Relator's interpretation, federal and state exchanges are not identical.

Perhaps most importantly, the ACA's regulatory structure strongly suggests meaningful differences between federal and state exchanges. *See Brown & Williamson*, 529 U.S. at 133 ("A court must therefore interpret a statute as a symmetrical and coherent regulatory scheme, and fit, if possible, all parts into an harmonious whole." (cleaned up)). A state may choose to establish its own exchange—incurring the associated costs—and in

6

exchange gain greater control, including the ability to impose additional regulations. Or a state may avoid these costs and allow the federal government to operate an exchange on its behalf. But a state which chooses the latter course cannot impose its own regulations on the federal exchange. It would make little sense for federal exchanges—all operated by the same federal entity—to be subject to a patchwork of disparate state requirements. Because "federal statutes are generally intended to have uniform nationwide application," we presume that "Congress when it enacts a statute is not making the application of the federal act dependent on state law." *Miss. Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 43 (1989); *accord United States v. Pray*, 373 F.3d 358, 362 (3d Cir. 2004) (Alito, J.).[4]

Despite this, Relator asserts his interpretation of § 156.200(d) flows from the Supreme Court's decision in *King v. Burwell*, which he reads as holding that there is "no meaningful difference" between a federal and state exchange. Relator Br. 16-19. *King* did not so hold, and in fact supports the conclusion that there are "meaningful differences" between federal and state exchanges.

In *King*, the Supreme Court held that the ACA's tax credits—a vital part of its reforms—were available in all states, not only those with a state-operated exchange. 576 U.S. at 479. The plaintiffs in *King* argued the phrase "an Exchange established by the State"

---

[4] 45 C.F.R. § 155.20 directs all exchanges to "meet the standards described in 45 C.F.R. 156." This cannot be proof, as Relator posits, that § 155.20 mandates that all exchanges must meet the same requirements. Section 156.200(d)—which Realtor at times urges is ambiguous—is part of 45 C.F.R. 156. Even if there were "no authority for the proposition that there are different obligations when applying to operate through" either type of exchange, Relator Br. 22, it would still be Realtor's burden as the non-moving party to cite authority for the opposite proposition. Section 155.20 is insufficient.

in a provision addressing tax credits referred only to state-created exchanges. *Id.* at 487, 492. The Court found that the phrase was ambiguous, at least in the context of tax credits, but when understood in the broader framework of the ACA referred to both state and federal exchanges. *Id.* at 498. Several other provisions of the ACA, the Court pointed out, would not make sense if tax credits were only available on state-created exchanges—such as requirements that all Exchanges provide "a calculator to determine the actual cost of coverage after the application of any premium tax credit" and report to the Treasury Secretary information about payment of tax credits. *Id.* at 490–91.

The Court was at pains to limit *King*'s scope. *Id.* at 493 n.3 (explicitly disclaiming any application of the decision to "other provisions in the Act" that "use the phrase 'established by the state'"). It emphasized that "an Exchange established by the state," in the specific context of the tax credit provision, must refer to both federal and state exchanges because the ACA's other major reforms would not work unless tax credits were available on both types of exchange. *Id.* at 494–95. Relator, however urges us to extend *King*'s holding to § 156.200(d), pointing out that the phrases "an Exchange established by a State" and "a State in connection with its Exchange" appear synonymous. Relator Br. 16–17. We decline to do so. The logic of *King* dictates that federal and state exchanges must be treated differently in this case. Relator does not seriously argue that requiring health insurers operating on federal exchanges to comply with state regulations is a key reform of the ACA analogous to tax credits. On the contrary, as explained above, it would not make sense to apply a patchwork of disparate state requirements to exchanges operated by the federal government.

8

Faced with these difficulties, Relator shifts tack and argues that Defendants agreed to comply with the New Jersey copay limitation. He points to the following portion of a federal Benefit Attestation Form, which he alleges Defendants answered falsely:

> *Applicant attests that it will comply with all benefit design standards, federal regulations and law, and state law regarding state mandated benefits for all services as applicable including: preventative services, emergency services, and formulary drug list.*

*See* Relator Br. 23.

This argument does not help Relator's case. The attestation is limited to "state law" that is "applicable" to the plan—it does not require QHP issuers to comply with state regulations beyond those enumerated in the ACA and its attendant regulations. We have already concluded that New Jersey's copay limitations are not applicable to Defendants' plans on the federal exchange. This attestation cannot be read to require compliance with those limitations.

III.

To proceed with his claim, Relator was required to show not only the falsity of Defendants' claims but also the materiality—their "tendency to influence" the government's payment decision. *See* 31 U.S.C. § 3729(b)(4). The District Court found that "even if Relator were found to have properly pled falsity, his claim would still fail the materiality requirement." *AmeriHealth* 2022 WL 621032, at *9.

Relator did not challenge this holding on appeal. *See* Relator Br. 14. Instead, Relator writes in his brief that his "position" on materiality in the District Court "is incorporated herein by reference." *Id.* This was not proper—"an attempt to incorporate by reference

9

arguments made in the District Court does not satisfy the rules of appellate procedure." *Norman v. Elkin*, 860 F.3d 111, 130 (3d Cir. 2017). Relator's "failure to challenge an independent basis" for the District Court's decision is "fatal to [his] appeal." *LabMD Inc. v. Boback*, 47 F.4th 164, 191 (3d Cir. 2022). Even if Relator did not forfeit his argument, he has failed to show that "the Government consistently refuses to pay claims in the mine run of cases based on noncompliance with the particular statutory, regulatory, or contractual requirement" or that Appellees' noncompliance was otherwise not "minor or insubstantial." *See Universal Health Services, Inc. v. United States ex rel. Escobar*, 136 S. Ct. 1989, 2003 (2016); *United States ex rel. Doe v. Heart Sol., PC*, 923 F.3d 308, 317–18 (3d Cir. 2019).

\*\*\*

For the above reasons, we will AFFIRM the District Court.[5]

---

[5] In reaching our conclusion, we do not consider whether Appellees' conduct may have violated New Jersey law. We decide only that the False Claims Act and the ACA do not provide a proper vehicle for Relator's claims.